LEWIS R. MEFFORD, D/B/A, etc., DUPONTONIA
WATER COMPANY, v. THE CITY OF DUPONTONIA
et al.—354 S. W. (2d) 823.

Middle Section.   July 28, 1961.

Petition for Certiorari Denied by Supreme Court, February 8, 1962.

350

Denney, Leftwich & Osborn, Z. T. Osborn, Jr., Nashville, for complainant.

H. Phillip Sadler, John L. Uhlian, Nashville, Hugh C. Howser, Phillips, Gullett & Steele, Charles Hampton White, Nashville, for defendants.

HUMPHREYS, J.  Complainant has appealed to this Court from the part of the decree of the Chancery Court dismissing so much of his bill as sought unliquidated damages of defendants for procuring a breach of his contract with others.

Complainant sued defendants alleging they had procured the breach of his contracts with sewer service customers, residents of defendant city, by enacting a city ordinance assuming to take over the operation of the

sewer system in the city area, and by advising users of the sewer system not to pay complainant for sewer service furnished. The bill sought an injunction prohibiting further interference of this kind, damages for the contracts breached, and a declaratory decree as to the validity of the ordinance by which defendant city sought to assume the duty of servicing the sewer system. Defendants answered denying the allegations of the bill and averring justification for the city's action. The Chancellor decreed a permanent injunction, but denied the prayer for damages "for the reason that complainant admitted he had no express contracts with his customers and there is no proof of damages in the record". He declined to make a declaratory decree on the ordinance. Complainant has appealed only from the disallowance of damages, and has assigned error based on this.

Complainant does business as Dupontonia Water Company, purchasing his water from Old Hickory Utility District and selling it to some 500 customers living in Dupontonia. His contract for the purchase of water provides for the use of the Old Hickory Utility District's sewage treatment facilities by the sewer system serving the residents of the City of Dupontonia. The connection of this sewer system with the sewerage disposal facilities of the Utility District has existed at least since complainant acquired the system in 1944, when the Dupont Company owned both the sewage disposal facility and the source of water supply for the City of Dupontonia, both of which it later gave to the Old Hickory Utility District, which now operates the same. Under complainant's contract with the Old Hickory Utility District he pays an annual surcharge on the water he buys from

the District of $1,250.00, to cover the cost of the Utility District's handling of the sewage from the Dupontonia Sewer System. At the time of the entry of the final decree, the Public Service Commission of Tennessee had disclaimed jurisdiction of sewer systems as public utilities and had declined to make a rate to be charged by complainant for the service he was rendering. Nevertheless, complainant was making a charge of an amount equal to fifty per cent of the water bill of each water customer connected to the sewer system. The sewer services rendered by complainant consist of unstopping the sewer lines when they become plugged up and, on occasion, the digging out and replacing a part of the line which has proved to be particularly troublesome. The average maintenance expense is approximately $500.00 annually. Since 1952, complainant has collected a charge for sewer service. We gather from the record that during all of this time there has been something of a controversy between complainant and the residents of the area served by the sewer system over complainant's right to collect a charge for sewer service, since the sewer system is actually the property of the owners of the property in the area. It was originally built by the United States Government during World War I days as a gravitational system, taking advantage of the rise and fall of the land, so as to require no pumping stations, and in the main traverses the city lots, although a portion of it was built in the thoroughfares which now constitute the streets of the city. Since none of the system belongs to complainant, residents of the area have objected to paying the charge he has sought to collect for sewer service. Complainant has had no formal contracts with his water customers

using the sewer lines. However, he did state that in his opinion he had implied contracts with these parties.

In August, 1959, defendant, City of Dupontonia, enacted an ordinance authorizing the city to expend funds on maintenance and repair of the sewer system. The ordinance declared this action was taken to protect the health and welfare of the residents of the City. Thereafter, notice of this legislative action was given to residents of the city by means of a circular, which among other things, advised that since the sewer system was dedicated to the public use and since the city had in effect assumed its maintenance, there was no longer any need or authority for Dupontonia Water Company to collect a sewer charge from its users and that they need not continue to pay. As a result of the enactment of this ordinance and the circulation of the notice thereof, as of January 31, 1960, complainant's water customers had declined to pay accounts rendered by complainant for sewer service in the amount of $1,329.98. In August, 1959, complainant brought this suit.

As stated, the only part of the decree appealed from is that declining to award treble damages under sec. 47-1706, T. C. A. So, the questions before us are whether, admitting as complainant does, there are no formal contracts between complainant and his water customers who use the sewer system, there are such implied contracts as are within the protection of the Code section sued on, and, if so, whether the legislative action taken by the City and the subsequent notice given was justified, or constituted a tort for which complainant can recover.

Section 47-1706, T. C. A., reads as follows:

"Procurement of breach of contracts unlawful—Treble damages.—It shall be unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto; and, in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of said contract; and the party injured by such breach may bring his suit for said breach and for such damages."

██ It is plain, of course, before there can be a recovery under this Code section, complainant must prove by the preponderance of the evidence the existence of contracts. We do not think, however, that this section contemplates only formal contracts. It is our opinion it protects contracts implied in fact, as well as formal, expressed contracts.

Complainant defines his contract in his brief as follows: "While the contract was not written nor expressed in formal terms, it was a valid subsisting contract, standing squarely upon the law respecting implied contracts that where one person furnishes a service to another and the person receiving the service knows that a charge is to be made for that service and accepts the same, he becomes obligated to pay."

██ From our examination of the record we are unable to agree with complainant that it proves the existence of a contract on which there can be a recovery.

█ In Weatherly v. American Agricultural Chemical Co., 16 Tenn. App. 613, 65 S. W. (2d) 592, we said that contracts implied in fact arise under circumstances which, according to the ordinary course of dealings and common understanding of men, show mutual intention to contract, and may result as legal inferences from the facts and circumstances of the case. And in Noon v. Fisher, D. C., 45 F. Supp. 653, it was stated that the difference between an expressed and implied contract lies merely in the mode of manifesting assent in that in the former, assent is set out in words or other mode of expression, whereas in the latter, assent is shown by the conduct of the parties. Thus it appears that in order that a contract may be implied in fact, the facts and circumstances of the case must show assent.

This assent on the part of the residents of the City of Dupontonia who use the sewer system, we are unable to find in the record. To the contrary, it rather clearly appears that throughout the history of complainant's dealings with them, the majority of them have strenuously objected to complainant's attempts to assume management of the sewer system and to make charges therefor and that they have submitted to complainant's activities and charges under the duress of possible loss of water service.

█ In our opinion the relationship between the sewer system owners and users and complainant can best be described as a contract relationship implied in law, or as a quasi contract, which is not within the protection of sec. 47-1706, since it is not really a contract at all, but simply an obligation to pay for services imposed by law, without assent, and enforced by action ex

contractu. Weatherly v. American Agricultural Chemical Co., 16 Tenn. App. 613, 65 S. W. (2d) 592.

Our conclusion this contract implied in law is not within sec. 47-1706, T. C. A., is based on the fact the statute contemplates liability only in the event one induces or procures the breach, or violation, or the refusal or failure to perform, a lawful contract by any party thereto. And, since in this contract implied in law the party sought to be bound has never consented to be bound and at most is bound only by operation of law after partial or complete performance by the other party, and is only bound to pay money, there can in fact be no inducement or procuring of the breach, or violation, or refusal or failure to perform the contract for which recovery can be had under the statute.

■ Even if we were to hold that complainant had valid contracts which the defendant city's act had induced others to breach, the complainant yet cannot recover if defendant city was justified in acting as it did. 30 Am. Jur. Interference, sec. 47; Am. Law Institute, Restatement, Torts, Vol. 4, sec. 770, Prosser on Torts, 736-737, 2d Ed. 1955. In discussing justification, Prosser says:

"In contrast, an impersonal or disinterested motive of a laudable character may protect the defendant in his interference. This is true particularly where he seeks to protect a third person toward whom he stands in a relation of responsibility,".

"There may also be a privilege to protect the public interest,". Prosser on Torts, 2d Ed. 1955, pp. 736-737.

Restatement gives the rule thus:

358

"Sec. 770. Privilege of Person Responsible For Welfare of Another.

"One who is charged with responsibility for the welfare of another is privileged purposely to cause him not to perform a contract, or enter into or continue a business relation, with a third person if the actor

"(a) does not employ improper means and

"(b) acts to protect the welfare of the other."

■ Under the record the city acted in the interest of the health and general welfare of its citizens. There is no suggestion it was motivated by anything else. This being the case, its action was justified, coming within the rule last mentioned.

■ Defendant Sadler's actions were not shown to be with any malice in fact, only to carry out his duties. So he, also, is protected by the rule of justification.

■ Finally, there seems to us to be yet another reason why there cannot be a recovery of damages in this case and that is, the act of the City on account of which complainant sues, was the enactment of an ordinance and the publication of notice thereof. A municipal corporation is not liable in tort for damage caused by or resulting from its performance or non-performance of its legislative duties, such as the enactment or repeal of ordinances, even when such acts constitute a positive invasion of individual rights. 43 C. J. Municipal Corporations, 1704, 63 C. J. S. Municipal Corporations sec. 1105, page 769. In Tennessee we are committed to this rule, mentioned by the cases of Town of Gainesboro

v. Gore, 131 Tenn. 35, 173 S. W. 442; City of Knoxville v. Hargis, 184 Tenn. 262, 198 S. W. (2d) 555. This rule is a necessary extension of the general rule that a municipality is immune from suit in tort with respect to acts in its governmental capacity, except to the extent it has insured itself against liability therefor, an exception having no application in this case. Williams v. Town of Morristown, 32 Tenn. App. 274, 222 S. W. (2d) 607, modified 189 Tenn. 124, 222 S. W. (2d) 615. It can hardly be argued that the enactment of an ordinance by a municipal corporation, and publication of notice thereof is not a governmental act. And, since it is, there can be no tort liability on the part of the city and its officers and agents solely on account thereof, such as is sought to be enforced in this case. This rule likewise operates to exonerate defendant Sadler.

Although complainant did not sue on the grounds of interference with business relationships existing between himself and the sewer users, his suit being predicated entirely upon breach of sec. 47-1706, T. C. A., he has referred in his brief to the rule, as discussed in 30 Am.Jur., 85 Interference, sec. 43, et seq., that the interference with business relationships existing between parties, even though not predicated on specific contract, is a tort and damage caused thereby may be recovered against the tort feasor. Even if complainant could proceed in this appeal upon this principle (which in our opinion cannot be done because his suit is predicated in terms upon the existence of contracts and the breach thereof, and he has elected to sue on sec. 47-1706 for treble damages), the grounds upon which we have heretofore denied recovery, except with respect to the absence

of contract, and the construction of sec. 47-1706, T. C. A., would apply and prevent recovery.

The main equity supporting complainant's case is the fact he pays a surcharge on the water he buys because the sewer system is connected to the Utility District disposal plant. But this is not enough to make his case out. His relief with respect to this is his right to have this cost considered in the fixing of his water rates by the Public Service Commission, a fact we can assume has already occurred since the Commission is presumed to do its duty.

For the reasons mentioned in our opinion, the assignments of error are overruled and the decree of the Chancellor is affirmed.

Shriver and Crownover, JJ., concurring.