339 F.2d 142
 OHIO VALLEY CARPENTERS DISTRICT COUNCIL, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL-CIO, and Albert Scheer and Robert Sauer, Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 No. 15629.
 United States Court of Appeals Sixth Circuit.
 November 19, 1964.
 
 Robert A. Wilson, Cincinnati, Ohio, for petitioners.
 George B. Driesen, Atty., N. L. R. B., Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Melvin J. Welles, Atty., N. L. R. B., Washington, D. C., on the brief), for respondent.
 Before WEICK, Chief Judge, O'SULLIVAN, Circuit Judge, and PRETTYMAN, Senior Circuit Judge.*
 PRETTYMAN, Senior Circuit Judge.
 
 
 1
 This is a labor dispute which arose out of a building operation. The parties involved are four, identified briefly as Jewel, Cardinal, Hankins and the Council. Jewel Garden Construction Co. was the prime contractor on an apartment project. Cardinal Industries is a corporation which manufactures and distributes prefabricated buildings and building parts. "Hankins" is a partnership engaged in supplying carpenters to building enterprises. The Ohio Valley Carpenters District Council is a labor organization composed of affiliates of the United Brotherhood of Carpenters and Joiners, AFL-CIO.
 
 
 2
 Jewel contracted with Cardinal to supply to the apartment project certain pre-fabricated parts. Hankins contracted (whether with Jewel or with Cardinal is not clear on the record) to perform the labor required to erect the apartment building. This included the installation of the parts produced by Cardinal. Hankins had an agreement with the Council, bargaining representative of the firm's employees, which agreement contained a provision (Article III) reading, in pertinent part:
 
 
 3
 "All framing and concrete forms are to be cut, fitted and erected by outside carpenters of this jurisdiction."
 
 
 4
 It is agreed this provision means that all framing and concrete forms are to be cut, fitted and erected by carpenters working on the jobsite, in contradistinction to workmen producing mill work to be moved, already prefabricated, to the job.
 
 
 5
 When Hankins undertook to install these latter parts, the Council advised that such action was in violation of the above-quoted provision of its agreement. An impasse ensued. Council then rescinded the contract with Hankins, advising union members that if they continued to work for Hankins after a certain hour they would no longer be employees of a union contractor.
 
 
 6
 Cardinal filed charges of unfair labor practice against the Council. The Labor Board held that the action of the Council was in violation of Section 8(b) (4) (i) and (ii) (B) of the Act.[1] The Council petitions for review, and the Board cross-petitions for enforcement.
 
 
 7
 The sections of the Act just referred to are as follows:
 
 
 8
 "(b) It shall be an unfair labor practice for a labor organization or its agents —
 
 
 9
 * * * * * *
 
 
 10
 "(4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is —
 
 
 11
 * * * * * *
 
 
 12
 "(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person * * *."
 
 
 13
 The foregoing is part of the so-called "secondary boycott" provisions of the statute. We need not venture into a general discussion of their purposes or meaning. The problem has been before the courts in numerous varying fact situations.[2]
 
 
 14
 The Supreme Court has pointed out that the statute cannot be applied literally, for "it would ban most strikes historically considered to be lawful, so-called primary activity."[3] At the same time the objectives of the statute in respect to secondary boycotts must be achieved. "[D]ual congressional objectives," the Court has called the provisions.[4] Thus lines must be drawn, and accordingly, as the Court has told us, the Board and the courts have attempted to devise criteria. "The nature of the problem, as revealed by unfolding variant situations, inevitably involves an evolutionary process for its rational response, not a quick, definitive formula as a comprehensive answer."[5]
 
 
 15
 The basic criterion is, as the statute (Section 8(b) (4)) specifically provides, the object, or objects, of the union action.[6] So the problem is: What was the object? The Board has held several times that, if a union demands that a contractor do something he is powerless to do except by ceasing to do business with somebody not involved in the dispute, it is manifest that an object of the union is to induce this cessation of business.[7] The courts to which this problem has come have agreed with the holdings.
 
 
 16
 We think this is rational and proper reasoning. So in the case before us Hankins's only means of compliance with the union demand was to cease doing business with Cardinal. Hankins had no power to do by its own act what the union demanded that it do, that is, build the framing with its own men on the jobsite. It is reasonable to hold that the object of the union was not an impossible act but was the alternative possible.
 
 
 17
 The union says its agreement with Hankins was a legal one, designed to preserve to its members (Hankins's employees) work normally theirs. But it is established that a legal contract does not immunize illegal action employed for its enforcement.[8]
 
 
 18
 We hold the order of the Board to be valid, and it will be enforced.
 
 
 
 Notes:
 
 
 *
 Sitting by designation from the District of Columbia Circuit
 
 
 [1]
 73 Stat. 525, 542 (1959), 29 U.S.C. § 158(b) (4) (i) and (ii) (B) (Supp. IV, 1963)
 
 
 [2]
 Local 761, Int'l Union of Elec., Radio and Mach. Workers, etc. v. NLRB, 366 U.S. 667, 81 S.Ct. 1285, 6 L.Ed.2d 592 (1961); NLRB v. Denver Bldg. Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284 (1951); International Brotherhood of Elec. Workers, etc. v. NLRB, 341 U.S. 694, 71 S.Ct. 954, 95 L.Ed. 1299 (1951); Local 74, United Brotherhood of Carpenters & Joiners, etc. v. NLRB, 341 U.S. 707, 71 S.Ct. 966, 95 L.Ed. 1309 (1951); Seafarers Int'l Union, etc. v. NLRB, 105 U.S.App.D.C. 211, 265 F. 2d 585 (1959); Sales Drivers, etc. v. NLRB, 97 U.S.App.D.C. 173, 229 F.2d 514 (1955), cert. denied, 351 U.S. 972, 76 S.Ct. 1025, 100 L.Ed. 1490 (1956); Retail Clerks Union Local 770, etc. v. NLRB, 111 U.S.App.D.C. 246, 296 F. 2d 368 (1961); NLRB v. General Drivers, etc., 225 F.2d 205 (5th Cir.), cert. denied, 350 U.S. 914, 76 S.Ct. 198, 100 L.Ed. 801 (1955); Local No. 5, United Ass'n of Journeymen, etc. v. NLRB, 116 U.S.App.D.C. 100, 321 F.2d 366, cert. denied, 375 U.S. 921, 84 S.Ct. 266, 11 L.Ed.2d 165 (1963); Local No. 636, etc. v. NLRB, 108 U.S.App.D.C. 24, 278 F.2d 858 (1960); NLRB v. Enterprise Ass'n, etc., 285 F.2d 642 (2d Cir. 1960)
 
 
 [3]
 Local 761, Int'l Union of Elec., Radio & Mach. Workers, etc. v. NLRB, 366 U.S. 667, 672, 81 S.Ct. 1285, 1288, 6 L.Ed.2d 592 (1961)
 
 
 [4]
 Id. at 679, 81 S.Ct. at 1293, quoting from NLRB v. Denver Bldg. Council, 341 U.S. 675, 692, 71 S.Ct. 943, 95 L.Ed. 1284 (1951)
 
 
 [5]
 Id. at 674, 81 S.Ct. at 1290
 
 
 [6]
 NLRB v. Denver Bldg. Council, 341 U.S. 675, 687-689, 71 S.Ct. 943 (1951)
 
 
 [7]
 Local No. 5, United Ass'n of Journeymen, etc. v. NLRB, 116 U.S.App.D.C. 100, 321 F.2d 366, cert. denied, 375 U.S. 921, 84 S.Ct. 266, 11 L.Ed.2d 165 (1963); Local 636, etc. v. NLRB, 108 U.S.App. D.C. 24, 278 F.2d 858 (1960); NLRB v. Enterprise Ass'n, etc., 285 F.2d 642 (2d Cir. 1960)
 
 
 [8]
 See, e. g., Local No. 5, United Ass'n of Journeymen, etc. v. NLRB, supra note 7