**CARRUTHERS READY–MIX, INC.,**
Plaintiff-Appellee,

v.

**CEMENT MASONS LOCAL UNION NO. 520, et al.,**
Defendants-Appellants.

No. 83–5465.

United States Court of Appeals, Sixth Circuit.

Argued July 16, 1985.

Decided Dec. 18, 1985.

Rehearing and Rehearing En Banc Denied Feb. 19, 1986.

Tim Edwards, Gerber, Gerber & Agee, Deborah Godwin argued, Memphis, Tenn., for defendants-appellants.

Joe D. Pegram (Lead) argued, Oxford, Miss., Larry S. Bush, Law School, University, Miss., for plaintiff-appellee.

Before JONES and CONTIE, Circuit Judges; and EDWARDS, Senior Circuit Judge.

CONTIE, Circuit Judge.

Cement Masons Local Union No. 521 appeals an order of the district court denying its motion to dismiss several claims of plaintiff Carruthers Ready-Mix, Inc.'s complaint pursuant to 29 U.S.C. § 187 in this interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The district court determined that 29 U.S.C. § 160(b) supplied the proper limitation period via *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), but applied a ten-year state limitation period, Tenn.Code Ann. § 28-3-110, on the ground that the *DelCostello* rule should not be applied retroactively in § 303 actions (29 U.S.C. § 187). Finding neither 29 U.S.C. § 160(b) nor the ten-year state period appropriate, we reverse.

**I.**

On April 22, 1980, Carruthers filed a complaint against Cement Masons. The complaint, filed pursuant to 29 U.S.C. § 187, arose out of Carruthers' work as a subcontractor to provide ready-mix cement to general contractors on construction projects. Carruthers alleges that Cement Masons then engaged in strikes against the general contractors to discourage the general contractor from dealing with Carruthers. Thirteen counts (1, 2, 3, 4, 5, 6, 8, 10, 12, 14, 16, 18, 20), premised on the federal cause of action provided by 29 U.S.C. § 187, alleged that Cement Masons' actions constituted unfair labor practices in violation of 29 U.S.C. § 158(b)(4). Seven counts (7, 9, 11, 13, 15, 17, 19) alleged that the same actions constituted a violation of Tennessee statutory law, Tenn.Code Ann. § 47-15-113 (now § 47-50-109). Count 21 alleged, with respect to all the counts, tortious interference with business in violation of state common law. Of the thirteen federal claims, only count 20 was filed within six months of the acts alleged in the complaint. Six counts (10, 12, 14, 16, 18, 20) were filed within one year of the acts in question, and all counts were filed within two years of the alleged acts. As damages Carruthers sought lost profits and lost goodwill. On October 15, 1980, the district court dismissed the state law claims on the ground that they were preempted by federal law.

On March 1, 1982, Cement Masons filed a motion to dismiss which the district court denied on August 6, finding that Tenn.Code Ann. § 28-3-110, a ten-year statute of limitations, applied. Another motion to dis-

miss was filed on October 8, 1982, and granted on February 24, 1983 with respect to all counts except count 20. The court applied the six-month limitation period provided by 29 U.S.C. § 160(b) and found that "[t]he language of section 303 mandates application of the limitations placed on section 301 actions to section 303 actions." On March 2, 1983, plaintiff Carruthers moved for reconsideration, and, on April 8, 1983, the court reinstated the dismissed counts on the ground that, although the six-month limitation period applied to § 303 actions, the limitation would not be applied retroactively. Therefore, all counts were timely under the ten-year period. On July 20, 1983, we granted the petition for permission to appeal. 28 U.S.C. § 1292(b).

## II.

■ "When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." *Wilson v. Garcia,* —— U.S. ——, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985) (footnote omitted) (applying 42 U.S.C. § 1988); *United Automobile Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 703–04, 86 S.Ct. 1107, 1111–12, 16 L.Ed.2d 192 (1966). *See DelCostello,* 462 U.S. at 158, 103 S.Ct. at 2287. "By adopting the statute governing an analogous cause of action under state law, federal law incorporates the State's judgment on the proper balance between the policies of repose and the substantive policies of enforcement embodied in the state cause of action." *Wilson,* 105 S.Ct. at 1945. In following this analysis, "we must characterize the essence of the claim in the pending case, and decide which state statute provides the most appropriate limiting principle." *Wilson,* 105 S.Ct. at 1943. "The characterization of ... [plaintiff's claim] for statute of limitations purposes is derived from the elements of the cause of action and Congress' purpose in providing it. These, of course, are matters of federal law." *Id.* at 1943–44; *DelCostello,* 462 U.S. at 159 n. 13, 103 S.Ct. at 2287 n. 13;

*United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 60–61, 101 S.Ct. 1559, 1562–63, 67 L.Ed.2d 732 (1981) (how an action is characterized "depends upon an examination of the nature of the federal claim and the federal policies involved."); *Hoosier Cardinal Corp.,* 383 U.S. at 706, 86 S.Ct. at 1113. However, "there is no reason to reject the characterization that state law would impose unless that characterization is unreasonable or otherwise inconsistent with national labor policy." *Id.; Headrick v. American District Telegraph Co.,* 526 F.Supp. 604, 606 (E.D.Tenn.1980). But this deference is "a matter of preference or comity—not obligation." *Wilson,* 105 S.Ct. at 1944 n. 22. Accordingly, we examine the cause of action created by section 303 and potentially analogous state law actions.

## A.

29 U.S.C. § 187 provides:

(a) It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 158(b)(4) of this title.

(b) Whoever shall be injured in his business or property by reason or any violation of subsection (a) of this section may sue therefor in any district court of the United States subject to the limitations and provisions of section 185 of this title without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit.

In this case, Carruthers alleges a violation of 29 U.S.C. § 158(b)(4) which provides in pertinent part:

It shall be an unfair labor practice for a labor organization or its agents—

(i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, pro-

cess, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—

.    .    .    .    .

(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person.

Section 8(b)(4)

makes it unlawful for a union to pressure neutral employees or employers where "an object thereof" is to cause a person or enterprise to cease doing business with the primary employer with whom the union has a dispute.... Section 8(b)(4) is thus designed to balance the dual congressional objectives of "preserving the right of labor organizations to bring pressure to bear on offending employers in primary labor disputes and of shielding unoffending employers and others from pressures in controversies not their own." *NLRB v. Denver Bldg. & Constr. Trades Council*, 341 U.S. 675, 692, 71 S.Ct. 943, 953, 95 L.Ed. 1284.

*Local Union No. 501, IBEW v. NLRB*, 756 F.2d 888, 892 (D.C.Cir.1985). "[U]nion conduct violates section 8(b)(4) if *any* object of that activity is to exert improper influence on secondary or neutral parties.... The ultimate inquiry focuses on the intent of the union, not the effects of its actions." *Id.; NLRB v. Local 58, IBEW*, 638 F.2d 36, 37 (6th Cir.1981); *Texas Distributors, Inc. v. Local Union No. 100, United Ass'n of Journeymen and Apprentices of the Plumbing and Pipefitting Industry*, 598 F.2d 393, 398 (5th Cir.1979); *NLRB v. Local 38, IBEW*, 339 F.2d 197, 200 (6th Cir. 1964); *Ohio Valley Carpenters District Council, United Brotherhood of Carpenters and Joiners of America, AFL–CIO v. NLRB*, 339 F.2d 142, 145 (6th Cir.1964). Accordingly, it is clear that union conduct violates § 8(b)(4) and provides an action for

damages under § 303 when the union acts with the intent and object of causing a cessation of or interference with business between a neutral party and the primary employer.

Tennessee recognizes both a common law and statutory action based on unlawful inducement of breach of contract. Tenn. Code Ann. § 47–50–109 (previously § 47–15–113) provides in pertinent part:

It shall be unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto.

Whether by statute or common law, this action has seven elements.

1. There must be a legal contract.
2. The wrongdoer must have knowledge of the existence of the contract.
3. There must be an intention to induce its breach.
4. The wrongdoer must have acted maliciously.
5. There must be a breach of the contract.
6. The act complained of must be the proximate cause of the breach of the contract.
7. There must have been damages resulting from the breach of the contract.

*Dynamic Motel Management, Inc. v. Erwin*, 528 S.W.2d 819, 822 (Tenn.App.1975); *Continental Motel Brokers, Inc. v. Blankenship*, 739 F.2d 226, 229 (6th Cir.1984). *See also Harvey v. Martin*, 714 F.2d 650, 652 (6th Cir.1983) (interference with property or contractual rights); *First Flight Associates, Inc. v. Professional Golf Co.*, 527 F.2d 931, 936 (6th Cir.1975); *Russell v. Belmont College*, 554 F.Supp. 667, 681 (M.D.Tenn.1982) (interference with employment contract and prospective employment); *Koehler v. Cummings*, 380 F.Supp. 1294, 1305 (M.D.Tenn.1974); *Hart v. First National Bank of Memphis*, 690 S.W.2d 536, 540 (Tenn.App.1985) (interference with contractual relationship); *Love and Amos*

*Coal Co. v. United Mine Workers,* 53 Tenn.App. 37, 378 S.W.2d 430, 438 (1963); *Mefford v. City of Dupontonia,* 49 Tenn. App. 349, 354 S.W.2d 823, 826 (1961). Further, "[e]very man has the right of property in his own labor, and the right to work without interference; and whoever intentionally interfers with this right is liable in tort for the damage caused...." *Large v. Dick,* 207 Tenn. 664, 343 S.W.2d 693, 694 (1960); *Shell Oil Co. v. State Tire & Oil Co.,* 126 F.2d 971, 975 (6th Cir.1942); *Kayser-Roth Corp. v. Textile Workers Union,* 347 F.Supp. 801, 815 (E.D.Tenn.1972), *aff'd,* 479 F.2d 524 (6th Cir.), *cert. denied,* 414 U.S. 976, 94 S.Ct. 292, 38 L.Ed.2d 219 (1973); *Ladd v. Roane Hosiery, Inc.,* 556 S.W.2d 758, 760 (Tenn.1977); *Schwab v. International Ass'n of Bridge, Structural & Ornamental Iron Workers, AFL–CIO, Local No. 782,* 482 S.W.2d 143, 146 (Tenn. App.1972); *Lann v. Third National Bank in Nashville,* 198 Tenn. 70, 277 S.W.2d 439, 440 (1955).

■ We find that the Tennessee actions for inducing a breach of contract and interference with business are analogous to the action provided by 29 U.S.C. § 187. We have previously held that actions for wrongful interference with business and actions pursuant to § 303 are merely different grounds to support the same cause of action. *Riverside Coal Co. v. United Mine Workers,* 410 F.2d 267, 269 (6th Cir.), *cert. denied,* 369 U.S. 846, 90 S.Ct. 89, 24 L.Ed.2d 95 (1969). "A secondary boycott is both effective and unlawful precisely because it disrupts the business relations of two parties. It is an interference by one party with the contractual relations of two others. Although this is not a perfect analogy to the typical interference claim, generally inducement of breach of contract, it is comfortably close." *Associated Imports, Inc. v. International Longshore-*

*men's Ass'n, AFL–CIO,* 609 F.Supp. 595, 600 (S.D.N.Y.1985). Both the state and federal actions require showings of intent and both provide relief for acts, the object of which is interference with contractual or business relationships. Accordingly, we consider what limitation period a Tennessee court would apply to actions for interference with a business relationship or inducing a breach of contract.

We have held, and Tennessee law confirms, that the three-year limitation period of Tenn.Code Ann. § 28–3–105 applies to common law actions for inducement of breach of contract and unlawful interference with a business.[1] *Harvey,* 714 F.2d at 652; *Edwards v. Travelers Insurance of Hartford,* 563 F.2d 105, 122 (6th Cir.1977), *citing Vance v. Schulder,* 547 S.W.2d 927, 932–33 (Tenn.1977). *See also Vance,* 547 S.W.2d at 932–33, *citing Budget Rent-A-Car of Knoxville, Inc. v. Car Services, Inc.,* 225 Tenn. 342, 469 S.W.2d 360, 362 (1971); *Brown v. Dunstan,* 219 Tenn. 291, 409 S.W.2d 365, 367 (1966). The propriety of this holding is enforced by the language of the statute which prescribes the three-year period for "[a]ctions for injuries to personal or real property," and the fact that the right to be free from interference with one's business arises under Tennessee law from every person's "right of *property* in his own labor." *Large,* 343 S.W.2d at 694 (emphasis added). " 'Property' includes not merely the right of private use and enjoyment of tangibles, but the intangible right of disposition and sale, and the word in its broader and truer sense includes one's business, as a thing entitled to protection from unlawful interference." *Sanford-Day Iron Works v. Enterprise Foundry & Machine Co.,* 138 Tenn. 437, 198 S.W. 258, 259 (1917). Accordingly, we conclude that the three-year period pre-

1. Tenn.Code Ann. § 28–3–105 provides:
   The following actions shall be commenced within three (3) years from the accruing of the cause of action:
   (1) Actions for injuries to personal or real property;
   (2) Actions for the detention or conversion of personal property;

   (3) Civil actions based upon the alleged violation of any federal or state statute creating monetary liability for personal services rendered, or liquidated damages or other recovery therefor, when no other time of limitation is fixed by the statute creating such liability.

scribed by § 28–3–105(1) applies to Carruthers' action.

However, in *United Mine Workers of America v. Meadow Creek Coal Co.*, 263 F.2d 52, 62 (6th Cir.), *cert. denied*, 359 U.S. 1013, 79 S.Ct. 1149, 3 L.Ed.2d 1038 (1959), we held that the ten-year limitations period of Tenn.Code Ann. § 28–3–110 applied to a § 303 action because such an action was a case "not expressly provided for."[2] In *Meadow Creek*, we relied on our prior decision in *City of Atlanta v. Chattanooga Foundry & Pipeworks*, 127 F. 23 (6th Cir. 1903), *aff'd*, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241 (1906). *Chattanooga Foundry* was an anti-trust case in which the plaintiff, like Carruthers, sought to recover for damages to its "business or property," paralleling the language of the respective statutes. We held that "this is an action on a statute liability, and that the cause of action does not arise out of any agreement, and that such an action is not barred for ten years." *Id.* at 32. The Supreme Court affirmed, holding that "there is a sufficiently clear distinction between injuries to property and 'injured in his business or property,' the latter being the language of the act of Congress." 203 U.S. at 398–99, 27 S.Ct. at 66–67.

We decline to follow *Meadow Creek*. In *Meadow Creek*, we relied heavily on the *Chattanooga Foundry* cases in which the courts focused almost exclusively on the nature of the harm inflicted rather than the reasons that the conduct in question was unlawful as reflected in the elements of the cause of action. While this analysis is clearly consistent with Tennessee law which provides that "the applicable statute of limitations is determined according to the gravamen of the complaint ..., [and] [t]he major criterion in ascertaining the gravamen of an action is the kind of damage alleged," *Prescott v. Adams*, 627 S.W.2d 134, 137 (Tenn.App.1981), in applying state periods of limitation to federal claims, how an action is characterized is a question of federal law which "depends upon an examination of the nature of the federal claim and the federal policies involved." *Mitchell*, 451 U.S. at 60–61, 101 S.Ct. at 1562–63; *Wilson*, 105 S.Ct. at 1943; *DelCostello*, 462 U.S. at 159, 103 S.Ct. at 2287. Accordingly, the type of injury involved is not dispositive in determining the applicable state limitation period and our decision in *Meadow Creek* relied too heavily on the type of injury involved. However, the precise elucidation of the rule of *Mitchell* and *Wilson* cited above was not available to the *Meadow Creek* and *Chattanooga Foundry* courts. Further, the decisions of this court and the Tennessee courts since the decision in *Meadow Creek* have refined the right of action available to remedy the inducement of a breach of contract or interference with a business, and strengthened the analogy with a § 303 action. An examination of a § 303 action in light of the elements of the claim rather than the type of injury inflicted clarifies the analogy to the Tennessee state claims for inducing a breach of contract and interfering with a business and directs application of the three-year rather than ten-year period.

Accordingly, we hold that the three-year period of § 28–3–105 provides the most appropriate state limitation period for application to Carruthers' § 303 action. Cement Masons contends, however, that federal law, 29 U.S.C. § 160(b), provides a more appropriate period.

### B.

In *DelCostello*, the Court held that the six-month limitation period of 29 U.S.C. § 160(b), governing unfair labor practices before the NLRB, applied to actions pursu-

---

**2.** Tenn.Code Ann. § 28–3–110 provides:
   The following shall be commenced within ten (10) years after the cause of action accrued:
   (1) Actions against guardians, executors, administrators, sheriffs, clerks, and other public officers on their bonds;
   (2) Actions on judgments and decress of courts of record of this or any other state or government; and
   (3) All other cases not expressly provided for.

ant to 29 U.S.C. § 185 alleging the employer's breach of a collective-bargaining agreement and the union's breach of its duty of fair representation. The Court recognized that "state statutes of limitations can be unsatisfactory vehicles for the enforcement of federal law" and that "it may be inappropriate to conclude that Congress would choose to adopt state rules at odds with the purpose or operation of federal substantive law." 462 U.S. at 161, 103 S.Ct. at 2289. Further, the Court found "no close analogy in ordinary state law," *id.* at 165, 103 S.Ct. at 2291, for the hybrid § 301 claim and rejected application of state arbitration statutes because of the poor analogy and brevity of the period provided, typically 30 to 90 days. *Id.* at 166, 103 S.Ct. at 2291. The Court rejected the analogy to state malpractice statutes, in part on the ground that "application of a longer malpractice statute as against unions would preclude the relatively rapid final resolution of labor disputes favored by federal law." *Id.* at 168, 103 S.Ct. at 2292. The Court settled on the six-month period in part to avoid applying different limitations periods to the § 301 hybrid claims, an element not present in the pending case. *Id.* at 169 n. 19, 103 S.Ct. at 2293 n. 19.[3]

The desirability for national uniformity and the fact that the six-month limitation is contained in the same statute as the § 303 action make application of *DelCostello* to the pending case appealing. However, an examination of *DelCostello's* reasoning persuades us that the settled rule of resort to state periods of limitation is appropriate in this context. First, as our earlier analysis demonstrates, Tennessee law provides a limitation period for common law state actions which are closely analogous to the § 303 action, unlike *DelCostello* in which no state limitation period represented a balancing of the unusual combination of interests implicated in a hybrid § 301 action. Second, application of the state limitation period is not inconsistent with the policies underlying federal labor law. Rapid resolution of labor disputes is especially favored when parties to the collective bargaining agreement are involved and breakdown of the collective bargaining process is threatened. No such threat exists in this case as no labor relationship exists between the parties to this action.[4] *See Monarch Long Beach Corp. v. Soft Drink Workers, Local 812, International Brotherhood of Teamsters,* 762 F.2d 228, 231 (2d Cir.1985) (four-year period for damages to one's business caused by actions in restraint of trade); *Associated Imports, Inc. v. International Longshoremen's Ass'n, AFL–CIO,* 609 F.Supp. 595, 600–01 (S.D.N.Y. 1985) ("Unlike a § 301 suit, the subject of a § 303 suit is thus not day-to-day shop conduct but past actions which are by definition abnormal. Resolution of the suit does not involve interpretation of the governing bargaining agreement, nor does it involve the grievance or arbitration machinery."); *Park Electric Co. v. IBEW,* 593 F.Supp. 1060 (N.D.Ill.1984) (applied five-year period for tortious interference with contract claims); *Nashaminy Constructors v.*

---

**3.** 29 U.S.C. § 160(b) provides that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board."

The parties note that § 303(b) makes its grant of jurisdiction "subject to the limitations and provisions of section 185 of this title." We interpret this to refer to those express limitations regarding jurisdiction, agency, venue, service of process and enforcement of judgments set out in section 185. Since the period of limitation rule of *DelCostello* is principally a result of the hybrid cause of action which results from the union's court-created duty of fair representation, it would be disingenuous to in-

fer that Congress intended to apply to a § 303 action the limitation period of an action it could not contemplate. *But see Landgrebe Motor Transport, Inc. v. District 72, International Association of Machinists & Aerospace Workers, AFL–CIO,* 763 F.2d 241, 244 n. 1 (7th Cir.1985).

**4.** We note that the interests implicated in limitation periods for filing administrative complaints and legal actions are often different. *Burnett v. Grattan,* 468 U.S. 42, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984). *See International Longshoremen's & Warehousemen's Union v. Juneau Spruce Corp.,* 342 U.S. 237, 243–44, 72 S.Ct. 235, 239, 96 L.Ed. 275 (1952).

*Trades Council,* 118 LRRM 2109 (E.D.Pa., May 21, 1984).[5]

Attention to the reasoning of *DelCostello* and its own express limitations indicate that *DelCostello* is not a "green light" to apply 29 U.S.C. § 160(b) to all actions in which federal labor law is implicated. The Court's language itself is persuasive.

> We stress that our holding today should not be taken as a departure from prior practice in borrowing limitations periods for federal causes of action, in labor law or elsewhere. We do not mean to suggest that federal courts should eschew use of state limitations periods anytime state law fails to provide a perfect analogy.... On the contrary, as the courts have often discovered, there is not always an obvious state-law choice for application to a given federal cause of action; yet resort to state law remains the norm for borrowing of limitations periods.

462 U.S. at 171, 103 S.Ct. at 2294. Accordingly, we follow *DelCostello* and look to state law for an analogous limitation period. Since all of Carruthers' claims were filed within the three-year period prescribed by Tenn.Code Ann. § 28–3–105, the district court did not err in refusing to dismiss the claims.

Accordingly, the judgment of the district court is AFFIRMED and the case REMANDED for further proceedings consistent with this opinion.

NATHANIEL R. JONES, Circuit Judge, concurring.

I agree that state law must be followed, as the language of *DelCostello* commands:

> We stress that our holding today should not be taken as a departure from prior practice in borrowing limitations periods for federal causes of action, in labor law or elsewhere. We do not mean to suggest that federal courts should eschew use of state limitations periods anytime state law fails to provide a perfect analogy.... [R]esort to state law remains the norm for borrowing of limitations periods.

462 U.S. at 171, 103 S.Ct. at 2294 (citation omitted). The circumstances that led the Court in *DelCostello* to apply federal law are not all present in a § 303 action for damages, or at least not to the same degree.

I concur in Judge Contie's opinion because the action pleaded here by Carruthers Ready-Mix is analogous to the Tennessee common-law action for procurement of breach of contract, and the three-year limitations period applies to such common-law actions in Tennessee. *See Edwards v. Travelers Insurance,* 563 F.2d 105, 122–23 (6th Cir.1977). I concur reluctantly, however, because *DelCostello* also commands us to consider the "federal policies at stake and the practicalities of litigation," 462 U.S. at 172, 103 S.Ct. at 2294, and to select a limitations period that is not too long or too short. *Id.* at 166, 103 S.Ct. at 2291 (citing *Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 707 n. 9, 86 S.Ct. 1107, 1114 n. 9, 16 L.Ed.2d 192 (1966)). I believe a shorter limitations period would better promote federal labor policies.

Tennessee law provides a limitations period that is shorter and which could apply to a § 303 action. In addition to the common-law cause of action, Tennessee law provides a statutory cause of action for procurement of breach of contract, Tenn. Code Ann. § 47–50–109 (1984) (formerly § 47–15–113), and the one-year limitations period appears to apply to this statutory

5. Prior to *DelCostello,* state limitation periods were generally applied to § 303 actions. *Consolidated Express, Inc. v. New York Shipping Ass'n,* 602 F.2d 494, 507–08 (3d Cir.1979), *vacated,* 448 U.S. 902, 100 S.Ct. 3040, 65 L.Ed.2d 1131 (1980); *Fruit and Vegetable Packers and Warehousemen Local 760 v. Morley,* 378 F.2d 738, 745–46 (9th Cir.1967); *Falsetti v. Local Union No. 2026, UMW,* 249 F.Supp. 970, 972 (W.D.Pa. 1965). *But see Fulton v. Plumbers and Steamfitters,* 695 F.2d 402, 405–06 n. 5 (9th Cir.1982), *cert. denied,* 464 U.S. 913, 104 S.Ct. 273, 78 L.Ed.2d 254 (1983); *Falsetti v. Local Union No. 2026, UMW,* 355 F.2d 658, 662 (3d Cir.1966); *International Union of Operating Engineers v. Fischbach and Moore,* 350 F.2d 936, 937–38 (9th Cir.1965); *Fischbach and Moore v. International Union of Operating Engineers,* 198 F.Supp. 911 (S.D.Cal.1961).

action. *See* Tenn.Code Ann. § 28–3–104; *Edwards,* 563 F.2d at 123 n. 1. In addition, both parties conceded in their briefs on appeal that the one-year limitations period of § 28–3–104 would be an appropriate choice for a § 303 damages action brought in Tennessee.

Despite my preference for the one-year limitations period, I cannot say that the three-year limitations period § 28–3–105 of the Tennessee Code is inapplicable; the Tennessee common-law cause of action for procurement of breach of contract does provide a close analogy to the § 303 action. Consequently, I concur in the opinion of Judge Contie. I note, however, that the state cause of action found to be analogous in this case, which arose in Tennessee, might not be the most analogous or most appropriate cause of action for borrowing a limitations period in actions that arise in other states.

GEORGE CLIFTON EDWARDS, dissenting.

In my opinion in this case, the six-month statute of limitations applied in *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) should also be applied here. I recognize of course that the complaining party in our instant case is a company suing a union for alleged violations of the Labor Management Relations Act, 29 U.S.C. § 187, whereas in *DelCostello* there was an employee suing both his union and employer.

Our present case, however, arises out of labor-management relations—as did the *DelCostello* case. Granting that not all cases need be handled under *DelCostello's* rule—no reason appears why this one should not. I fail to see any need to turn to state law when logic suggests strongly that we apply the six months limitation.

Clearly the need for speedy resolution of disputes in the labor management arena cited in *DelCostello* applies equally here. Equally clearly it is desirable to maintain symmetry in the labor management field between suits against unions and suits against employers. What's sauce for the goose is sauce for the gander. Or at least it should be!