IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT NASHVILLE

_____

NEW LIFE CORPORATION OF AMERICA,

    Plaintiff-Appellant,

                                 Davidson Circuit #93C-1650

Vs.                         C.A. No. 01A01-9505-CV-00223

THOMAS NELSON, INC.,

    Defendant-Appellee.

_____

FROM THE CIRCUIT COURT OF DAVIDSON COUNTY

THE HONORABLE BARBARA N. HAYNES, JUDGE

Michael L. Dagley, David A. French of Farris,
Warfield & Kanaday in Nashville
For Appellant

Jon D. Ross, A. Scott Ross of Neal & Harwell
in Nashville
For Appellee

*REVERSED IN PART, AFFIRMED IN PART AND REMANDED*

Opinion filed:



FILED

**February 7, 1996**

**Cecil W. Crowson**
**Appellate Court Clerk**

W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.

CONCUR:

ALAN E. HIGHERS, JUDGE

WILLIAM H. WILLIAMS, SENIOR JUDGE

Plaintiff, New Life Corporation of America (New Life), appeals from the order of the trial court which granted summary judgment to defendant, Thomas Nelson, Inc. (Nelson).

New Life is a Tennessee not-for-profit corporation which was originally founded in 1979 as World Bible Society of America (World Bible). Norvell Olive, World Bible's founder, developed a successful merchandising program for the sale of audio and video cassettes emphasizing religious themes. Apparently by 1986 or 1987, Olive was interested in selling the business, and in 1988, Nelson made an offer of $7,000,000.00 to purchase the business. This offer was rejected, and Olive arranged for the sale of the company to Jordan Industries for $7,850,000.00. However, the transaction for the sale was not completed. Subsequently, in 1991, Nelson again offered to purchase the business. The offer was accepted, and Nelson purchased all of the assets of World Bible for $6,150,000.00. The terms of the sale are embodied in an "Asset Purchase Agreement" dated October 1, 1991. Following the sale of the assets, World Bible's name was changed by charter amendment to New Life Corporation of America.

In June, 1993, New Life filed a complaint against Nelson seeking compensatory damages in the amount of $6,100,000.00 and punitive damages in the amount of $25,000,000.00. The complaint avers that World Bible, through a division known as Silver Bells, had developed its business of selling Christmas music cassette tapes to the extent that annual sales exceeded $8,000,000.00 by 1985. The complaint also avers that the success of the business was largely a result of plaintiff's development of "highly valuable research, development and marketing data and techniques, and other confidential business assets including

2

without limitation, customer lists, supplier lists, business plans, marketing strategies, customer preference data, pricing data (both current and historical), product cost data, and profit and overhead information."

Plaintiff alleges that in 1988 and 1989, Harry Lee Dickey was its president and chief operating officer and was responsible for the day to day conduct of the business. Dickey had full access to all information concerning every aspect of the business, and plaintiff alleges that in February of 1989, a representative of Nelson contacted Dickey about starting a division to compete with World Bible. The complaint alleges that during the period of February through May of 1989, Dickey met with representatives of Nelson and at the request of Nelson prepared marketing plans and financial projections for Nelson to use in its business as a competitor with World Bible. Dickey prepared the plans for Nelson while he was World Bible's employee and in the preparation used the marketing and financial information developed by World Bible for the conduct of its business. The complaint further alleges that Nelson's representative told Dickey that one of Nelson's objectives in obtaining the plans and projections was to drive World Bible out of business or to injure World Bible to such an extent that it could be purchased for a very low price. In May, 1989, Nelson and Dickey entered into an employment agreement, and Dickey submitted his resignation to World Bible on or about June 1, 1989, to terminate his employment effective June 30, 1989. The complaint further alleges that Dickey assembled plaintiff's confidential information while employed by plaintiff and then took that information with him to Nelson, and that all of Dickey's acts were performed at the request and encouragement of Nelson. The complaint avers that Dickey breached his fiduciary duties as an officer and employee of the plaintiff.

The complaint further avers that because of the wrongful activities of

3

Nelson, World Bible's business suffered during the period of July, 1989, through September, 1991, and that in October, 1991, World Bible agreed to sell its assets to Nelson at a greatly deflated price. The complaint avers that World Bible learned of Nelson's activities in December, 1992, long after the sale of its assets to Nelson.

The complaint sets out six counts, but only Counts I, II, and V are involved in this appeal. In Count I, World Bible alleges that Nelson's inducement of Dickey to perform work for the benefit of Nelson while he was employed by World Bible constituted an inducement or procurement of the breach of Dickey's contract of employment under the common law and also violated T.C.A. § 47-50-109 (1995). Count II alleges that Nelson's actions constituted interference with existing business relations under the common law of Tennessee. Count V avers that plaintiff is a consumer, and that Nelson's activities violated the Tennessee Consumer Protection Act, T.C.A. § 47-18-101, et seq. (1995).

Nelson's answer denies the material allegations of the complaint and avers that plaintiff has no standing to bring this action because any claim or cause of action that plaintiff had was transferred and sold to Nelson by virtue of the asset purchase agreement.

The trial court granted Nelson summary judgment on Counts I, II, and V, but denied Nelson's motion as to the remaining counts. After plaintiff's application for interlocutory appeal was denied by this Court, plaintiff voluntarily dismissed the remaining counts of the complaint and appealed to this Court pursuant to Rule 3, T.R.A.P. Plaintiff's only issue for review is whether the trial court erred in granting summary judgment to defendant on Counts I, II, and V.

Nelson, in its brief, presents the issue of whether this Court has jurisdiction

4

to hear the case because there was no final order entered in the trial court. Nelson filed a motion to dismiss the appeal on the same ground, and on August 7, 1995, this Court, in denying the motion to dismiss, stated:

> Thomas Nelson asserts that New Life cannot create a right to appeal an interlocutory order by voluntarily dismissing its remaining claims. This court disagrees. A party is entitled to an appeal as of right once the trial court has entered a final order that resolves all the claims between all the parties. Tenn.R.App.P. 3 (a). The voluntary dismissal of a claim resolves that claim for the purposes of Tenn.R.App.P. 3. Consequently, the order dismissing New Life's remaining claims resolved all the remaining issues between the parties and New Life was entitled to an appeal as of right.

The order of this Court effectively disposes of appellee's issue, and we will not consider it further.

A trial court should grant a motion for summary judgment only if the movant demonstrates that there are no genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law. Tenn.R.Civ.P. 56.03. *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Dunn v. Hackett*, 833 S.W.2d 78, 80 (Tenn. App. 1992). The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Byrd*, 847 S.W.2d at 210. When a motion for summary judgment is made, the Court must consider the motion in the same manner as a motion for directed verdict made at the close of plaintiff's proof. That is, "the Court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Id.* at 210-11. In *Byrd*, the Tennessee Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial [citations omitted]. In this regard, Rule 56.05 provides that the nonmoving party cannot

simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 211. (Emphasis in original).

Nelson first asserts that plaintiff cannot maintain this action, because plaintiff sold all of its assets to Nelson, including the alleged causes of action involved in this case. The Asset Purchase Agreement between the parties provides for the sale of:

> [A]ll of Sellers' assets, wherever located (collectively, subject only to such specified exclusions, the "Assets"), including but not limited to the following: all of Sellers' respective rights, properties, cash, assets, contracts and businesses of every kind, character and description, whether tangible or intangible, whether real, personal or mixed, whether accrued, contingent or otherwise, wherever located, including without limitation, all cash, accounts receivable, inventories, fixed assets, machinery and equipment, furniture, furnishings and fixtures, prepaid expenses, deposits and deferred charges, contract rights, copyrights, master recordings, trademarks, service marks, trade names, and all claims and causes of actions brought (or subject to being brought) by either Seller relating to any of the foregoing, including claims and actions for past infringement.

New Life asserts that its claim against Nelson was unknown at the time the assets were sold, and that there was no intent to include any such claim in the agreement. New Life further asserts that the plain language of the agreement does not include unknown claims, and that a separate provision of the Asset Purchase Agreement, Paragraph 4.13,[1] which specifically requires disclosure of

---

[1]Paragraph 4.13 of the agreement provides:

> 4.13. <u>Litigation</u>. Except as set forth in <u>Schedule 4.13</u>, there are no claims, actions, suits, proceedings or investigations pending or threatened by or against, or otherwise affecting Seller at law or in equity or before or by any federal, state, municipal or other governmental department, commission, board, agency, instrumentality or authority. Seller does not

6

all claims and suits by or against plaintiff, does not encompass the claim involved in this case.

The agreement specifically transfers claims "brought or subject to being brought" which implicitly denotes the known existence of the claims. There is no provision to transfer unknown claims, and it is uncontroverted from the proof before the Court that plaintiff did not know of the claim at the time the Asset Purchase Agreement was signed. Moreover, Nelson specifically denies that it engaged in any wrongful conduct and thus denies the existence of the claim. Under these circumstances it appears uncontroverted that there was no intent on the part of either party to include in the transfer of assets a claim of plaintiff against Nelson.

We also note that the transfer of an obligee's claim(s) to an obligor is, in effect, a release by the obligee of its claims against the obligor. The transfer by the obligee of claims against the obligor vests in the obligor all of the obligee's rights in these claims, thus totally eliminating the obligee's ability to further pursue any action against the obligor. This is the same effect created by a release.

In *Richland Country Club v. CRC Equities, Inc.*, 832 S.W.2d 554 (Tenn. App. 1991), this Court said:

> First, we note that a release is a contract and rules of construction applied to contracts are used in construing a release. *Jackson v. Miller*, 776 S.W.2d 115 (Tenn. App. 1989). The cardinal rule is to ascertain the intention of the parties. *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578 (Tenn. 1975). A general release covers all claims between

> know or have any reason to know of any such claim, action, suit, proceeding or investigation. No claim, action, suit, proceeding or investigation set forth in Schedule 4.13, could, if adversely decided, have a material adverse effect on the condition (financial or otherwise), assets, liabilities, earnings, prospects or business of Seller.

7

the parties which are in existence and within their contemplation. *Cross v. Earls*, 517 S.W.2d 751 (Tenn. 1974). In *Jackson*, the court adopted these additional propositions of law in seeking to discover the effect of a release:

> In interpreting a release to determine whether a particular claim has been discharged, the primary rule of construction is that the intention of the parties shall govern, and this intention is to be determined with a consideration of what was within the contemplation of the parties when the release was executed, which in turn is to be resolved in the light of all of the surrounding facts and circumstances under which the parties acted. (Citing 66 Am.Jur.2d *Release* § 30 (1973).
>
> Claims in tort which have not matured or were not known to the parties when they executed their release and which they did not intend to affect when the settlement was made are not discharged by a release. (Citing 66 Am.Jur.2d *Release* § 33 (1973)).
>
> A release ordinarily covers all such matters as may fairly be said to have been within the contemplation of the parties when it was given . . . consequently a demand of which a party was ignorant when the release was given is not as a rule . . . embraced therein . . . (Citing 76 C.J.S. *Release* § 52 (1952)).

832 S.W.2d at 557 (quoting *Jackson v. Miller*, 776 S.W.2d 115, 118 (Tenn. App. 1989)).

Nelson asserts that Olive's affidavit in which he states that the claim at issue was unknown and was not intended to be included in the agreement, violates the parole evidence rule and should not be considered. Nelson argues that the language of the agreement transfers all of the assets and all claims and causes of actions of any nature, and that the affidavit would have the effect of varying the terms of the agreement.

8

A contract must be construed with reference to the situation of the parties, the business to which the contract relates, and the subject matter as it appears from the words used. *Petty v. Sloan*, 197 Tenn. 630, 277 S.W.2d 355, 359 (1955).

Olive's affidavit clearly shows that the claim against Nelson was unknown, and in the absence of language in the agreement that includes unknown claims, Olive's affidavit stating that the claim was not intended to be a part of the agreement does not have the effect of varying terms of the written agreement. Moreover, considering the situation of the parties, it is not the usual and customary practice in this type of arrangement for an obligee to assign to an obligor its claims against that obligor. Considering all of the factors, our interpretation of the agreement is that it does not include any claim or cause of action that plaintiff has against defendant.

Nelson next asserts that plaintiff must either disaffirm the Asset Purchase Agreement and tender the consideration therefor or abide by the agreement. Nelson argues that plaintiff's retention of the benefits of the contract has operated to affirm the agreement and waive the claims presented in the instant case.

We do not disagree with the general proposition asserted by Nelson that a party may not affirm a contract by retaining its benefits and at the same time assert that the contract is void because it was induced by fraud. However, that is not the situation in the case at hand. In this case, plaintiff contends that defendant committed acts that seriously damaged the value of plaintiff's business, and that not knowing the cause of the devaluation of its business, plaintiff sold the business to defendant. Subsequently, plaintiff learned that defendant had committed acts that damaged the value of the business, and

9

then brought suit against defendant to obtain compensation for these wrongful acts. There is no claim that the contract was induced by fraud; rather the claim is that defendant committed tortious acts that caused damage to plaintiff's business. Under this scenario, plaintiff need not disaffirm the contract for the sale of its business in order to recover damages for defendant's alleged wrongful acts, because the sale of the business is separate and distinct from the acts committed by defendant.

In the case at bar, Dickey's deposition establishes that he was plaintiff's employee, that he was solicited by defendant's representative to provide information concerning his employer's business, that defendant's representative indicated that he wanted to injure or damage plaintiff's business to the extent that it could be profitably purchased by defendant, and that pursuant to defendant's solicitation, Dickey provided the information while he was in the employ of plaintiff. The deposition further indicates that Nelson's representative actively sought Dickey's services, and that Dickey was enticed by defendant to leave his employment with plaintiff. The record also indicates that plaintiff released its former employee, Harry Dickey, from any and all claims plaintiff may have against Dickey in connection with his activity on behalf of Nelson, and Nelson asserts that this release operates as a release of these claims against Nelson. We disagree. This Court considered the same argument in *TSC Industries, Inc. v. Tomlin*, 743 S.W.2d 169 (Tenn. App. 1987) and held that a compromise settlement of a breach of contract action between the injured party and the breaching party does not bar an action for an inducement of the breach of that contract against a third party.

Count I of plaintiff's complaint alleges a cause of action under both the common law and under T.C.A. § 47-50-109 (1995) for inducement to breach a

10

contract. T.C.A. § 47-50-109 provides:

> 47-50-109. Procurement of breach of contracts unlawful - Damages. - It is unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto; and, in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of the contract. The party injured by such breach may bring suit for the breach and for such damages.

The statute is declaratory of the common law except as to the amount of damages that may be recovered against a wrongdoer. *Emmco Ins. Co. v. Beacon Mut. Indem. Co.*, 204 Tenn. 540, 322 S.W.2d 226, 231 (1959). The elements of a cause of action for procurement of the breach of a contract are: there must be a legal contract; the wrongdoer must have knowledge of the existence of the contract; there must be an intention to induce its breach; the wrongdoer must have acted maliciously; there must be a breach of the contract; the act complained of must be the proximate cause of the breach of the contract; and, there must have been damages resulting from the breach of the contract. *Campbell v. Matlock*, 749 S.W.2d 748, 751 (Tenn. App. 1987); *Dynamic Motel Management, Inc. v. Erwin*, 528 S.W.2d 819, 822 (Tenn. App. 1975).

The evidence in the record at this stage of the proceedings establishes that a genuine issue of material fact exists as to whether the above elements are satisfied in this case. Dickey had a contract of employment with World Bible (New Life), and although the contract was terminable at will, an action can still be maintained for procurement of the breach of the contract. *Dorsett Carpet Mills, Inc. v. Whitt Tile & Marble Distrib. Co.*, 1986 WL 622 (Tenn. App. W.S. Jan. 2, 1986) *permission to appeal granted by Supreme Court to consider appropriate*

11

*measure of damages*, 734 S.W.2d 322 (Tenn. 1987). Olive's affidavit and Dickey's deposition state that Nelson knew of the contract, that Nelson intended to induce its breach, that Nelson acted maliciously, that Nelson's actions caused the contract to be breached, and that World Bible (New Life) was damaged as a result of the breach. Plaintiff has come forward with proof which establishes that there are genuine issues of material fact as to Count I, and therefore, summary judgment was not appropriate.

In Count II, plaintiff alleges that defendant's actions constituted an intentional interference with a business relationship. In *Kan Const. & Cleaning Corp. v. Tatum*, No. 01A01-9304-CV-00150, 1993 WL 434741, (Tenn. App. W.S. Oct. 27, 1993) the Court stated:

> The elements of the tort of interference with business relations are also set out in 45 Am.Jur.2d *Interference* 50 (1969).
>
> > The basic elements which establish a prima facie tortious interference with a business relationship are the existence of a valid business relation (not necessarily evidenced by an enforceable contract) or expectancy; knowledge of the relationship or expectancy on the part of the interferer; an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and resultant damage to the party whose relationship or expectancy has been disrupted.

*Id.* at 4.

Olive's affidavit and Dickey's deposition establish the existence of a genuine issue of material fact as to whether Nelson's contacts with plaintiff's employee (Dickey) constituted an interference with plaintiff's business relationship with Dickey. Therefore, summary judgment was not appropriate on Count II.

In Count V, plaintiff seeks recovery pursuant to the Tennessee Consumer Protection Act, T.C.A. § 47-18-101, et seq., (1995). Plaintiff asserts that it was injured by "unfair and deceptive practices" and therefore should be allowed recovery under the Act. Plaintiff primarily relies upon *Smith Corona Corp. v. Pelikan, Inc.*, 784 F.Supp. 452 (M.D. Tenn. 1992), which held that corporations may recover under the Act, and that recovery under the Act is not restricted to "consumers." The decision in *Smith Corona* is not binding authority on this Court, and we see no need to analyze the case in view of the language of the Consumer Protection Act and the peculiar facts of the case before us. T.C.A. § 47-18-102 provides:

> 47-18-102. Purposes. - The provisions of this part shall be liberally construed to promote the following policies:
>
> (1) To simplify, clarify, and modernize state law governing the protection of the consuming public and to conform these laws with existing consumer protection policies;
>
> (2) To protect consumers and legitimate business enterprises from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce in part or wholly within this state;
>
> (3) To encourage and promote the development of fair consumer practices;
>
> (4) To declare and to provide for civil legal means for maintaining ethical standards of dealing between persons engaged in business and the consuming public to the end that good faith dealings between buyers and sellers at all levels of commerce be had in this state; and
>
> (5) To promote statewide consumer education.

T.C.A. § 47-18-103 (1995) provides in pertinent part:

> 47-18-103. Definitions. - As used in this part, unless the context otherwise requires:
>
> \*           \*           \*

13

(9) "Trade," "commerce," or "consumer transaction" means the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property, tangible or intangible, real, personal, or mixed, and other articles, commodities, or things of value wherever situated.

The gravamen of plaintiff's action in the case before us is not that the contract for the sale of its assets was infected with unfair or deceptive acts or practices. On the contrary, plaintiff explicitly argues that the sales contract is not involved in this litigation and plaintiff has not sought to disaffirm the contract for the sale of its assets. The plaintiff alleges in its complaint that defendant willfully and maliciously damaged plaintiff's business. The complaint does not, however, allege that such action is in connection with any "sale, lease, or rental, or distribution of any goods, services, or property . . . ." Under the allegations of this complaint, and the facts in the record, there is simply nothing to constitute "unfair or deceptive acts or practices in the conduct of any trade or commerce," and therefore the Consumer Protection Act is not applicable. The trial court properly granted summary judgment on this count of the complaint.

In summary, the order of the trial court granting summary judgment as to Counts I and II of the complaint is reversed, and the order granting summary judgment as to Count V is affirmed. The case is remanded to the trial court for such further proceedings as may be necessary. Costs of the appeal are assessed against appellee.

_____
W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.

CONCUR:


_____
ALAN E. HIGHERS, JUDGE

_____
WILLIAM H. WILLIAMS,
SENIOR JUDGE