RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0271P (6th Cir.)
File Name: 00a0271p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

LORI D. ATCHLEY d/b/a RCW
REALTY COMPANY,
   *Plaintiff-Appellant,*

   *v.*

RK COMPANY, ROBERT R.
KRILICH, and DONNA J.
KRILICH,
   *Defendants-Appellees.*

No. 99-5486

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 98-00319—Aleta A. Trauger, District Judge.

Argued: March 7, 2000

Decided and Filed: August 16, 2000

Before: SILER and GILMAN, Circuit Judges;
O'MALLEY, District Judge.[*]

_____

[*]The Honorable Kathleen McDonald O'Malley, United States District
Judge for the Northern District of Ohio, sitting by designation.

1

---

**COUNSEL**

---

**ARGUED:** Harold Naill Falls, Jr., FALLS, RAMSEY & VEACH, Nashville, Tennessee, for Appellant. John S. Hicks, BAKER, DONELSON, BEARMAN & CALDWELL, Nashville, Tennessee, for Appellees. **ON BRIEF:** Harold Naill Falls, Jr., FALLS, RAMSEY & VEACH, Nashville, Tennessee, for Appellant. John S. Hicks, BAKER, DONELSON, BEARMAN & CALDWELL, Nashville, Tennessee, for Appellees.

O'MALLEY, D. J., delivered the opinion of the court, in which SILER, J., joined. GILMAN, J. (p. 11), delivered a separate concurring opinion.

---

**OPINION**

---

O'MALLEY, District Judge.   Plaintiff-appellant Lori Atchley, d/b/a RCW Realty Company, ("Atchley") appeals a grant of summary judgment in favor of defendants-appellees RK Company and Robert and Donna Krilich. For the reasons stated below, we **AFFIRM**.

I.

The following facts are not in dispute. This case centers around a piece of property located in Sumner County, Tennessee, known as "Foxland." In 1994, Krilich owned Foxland and entered into an agreement to transfer Foxland (and certain other assets) to Health Care Corporation of America, Inc. ("HCCA"), in exchange for some HCCA stock. Krilich and HCCA also agreed that they would not record the deed transferring Foxland from Krilich to HCCA until HCCA had registered the stock with the Securities and Exchange Commission.

---

**CONCURRENCE**

---

RONALD LEE GILMAN, Circuit Judge, concurring. I agree with the majority's ultimate conclusion that the district court did not err in granting summary judgment in favor of the defendants. In my view, however, the defendants are entitled to judgment solely because, as ably explained by the majority, there was no breach of the contract under the peculiar circumstances of this case.

Despite my view that there was no breach, I am of the opinion that a conditional contract is still a "lawful contract" for the purposes of T.C.A. § 47-50-109. The contract between Stinson and HCCA did not cease to exist when the condition went unsatisfied; rather, the valid agreement simply was not consummated because of the unmet condition.

the district court did not err when it entered judgment in favor of defendants-appellees and, thus, we **AFFIRM** that judgment.

   **IT IS SO ORDERED.**

In 1996, a real estate developer named Jimmy Stinson approached Krilich about buying Foxland. At first, Krilich told Stinson that HCCA owned Foxland, even though there was no recorded deed transferring the property from Krilich to HCCA. Acting upon this representation, Stinson entered into negotiations with HCCA to buy Foxland. HCCA then approached appellant Atchley, a real estate broker, who drew up a contract of sale between HCCA, as seller, and Stinson, as buyer. HCCA and Stinson signed Atchley's contract on May 8, 1997, agreeing that the purchase price for Foxland would be $16 million, Stinson would immediately pay HCCA $1,000 in earnest money, and HCCA would pay Atchley a commission of 6%, or $960,000, upon completion of the sale.

In February of 1997, however, a few months before Stinson and HCCA signed the Foxland sale contract, Krilich signed *and recorded* a deed transferring Foxland from himself to defendant RK Company, a company he controlled. HCCA learned of Krilich's action in April of 1997, when it finally recorded its own, earlier-signed deed, which had transferred Foxland from Krilich to HCCA. Thus, when HCCA entered into the May, 1997 contract to sell Foxland to Stinson, HCCA and Atchley both knew that there existed a potential title dispute.

Atchley addressed this potential title dispute in the HCCA/Stinson contract by adding certain language under the heading "Miscellaneous Conditions." Specifically, the contract provided:

❖   [HCCA] hereby discloses that as of the date of the signing of this contract, the title to [Foxland] is the subject of pending negotiation and possible litigation with [Krilich], and at this time is not a clear and marketable title. This contract is contingent upon [HCCA] resolving all questions and issues regarding title, and obtaining clear and marketable title in order to transfer to [Stinson] clear and marketable title. If title is not made clear and marketable, this contract is null and void, and [HCCA] and [Stinson]

shall hold each other harmless, and earnest money will be refunded to [Stinson].

At the time the contract was signed, HCCA and Atchley were hopeful that the title dispute with Krilich would be quickly resolved.

Unfortunately, HCCA's hope was false; HCCA and Krilich are currently litigating ownership of title to Foxland in the United States District Court for the Middle District of Tennessee.[1]  In October of 1997, it became clear to Stinson that HCCA was unable to timely[2] meet the "miscellaneous condition" of "obtaining clear and marketable title." Accordingly, Stinson sought and obtained the return of his

---

[1] *Healthcare Center of America, Inc. v. Krilich*, case nos. 3:97-0716 and 3:97-0717 (consolidated).  The lawsuits surrounding the transfers of Foxland are not the only federal cases in which Krilich has been a party. *See, e.g., United States v. Krilich*, 159 F.3d 1020 (7th Cir. 1998), *cert. denied*, 120 S.Ct. 42 (1999) (affirming Krilich's convictions for fraud and RICO violations, predicated on bribery, in relation to a land development scheme); *United States v. Krilich*, 126 F.3d 1035 (7th Cir. 1997) (after Krilich allegedly filled in wetlands without a permit, in violation of the Clean Water Act, he entered into a consent decree with the Environmental Protection Agency, but then failed to meet his obligations); *United States v. Krilich*, 470 F.2d 341 (7th Cir. 1972), *cert. denied*, 411 U.S. 938 (1973) (affirming Krilich's convictions for income tax evasion and willfully filing a false income tax return); *Summit Tax Exempt L.P. II v. Berman*, 1989 WL 152796 (S.D.N.Y. July 19, 1989) (granting sanctions against Krilich for, inter alia, filing a frivolous counterclaim).  Krilich has also litigated in state courts.  *See, e.g., Yearwood, Johnson, Stanton & Crabtree, Inc. v. Foxland Development Venture*, 828 S.W.2d 412 (Tenn. Ct. App. 1991) (affirming default judgment entered against Krilich for having failed to comply with court orders); *Stura v. Krilich*, 274 N.E.2d 657 (Ill. Ct. App. 1971) (affirming quiet title action in favor of plaintiff).

[2] The contract did not set out a time within which HCCA had to fulfill the "miscellaneous condition" of providing clear and marketable title, but the contract did provide that time was "of the essence of this contract and all conditions thereof."  The parties at least concede, for purposes of this proceeding, that a "reasonable" time component is implied in the contract; Atchley does not contend that Stinson was required to stand idle indefinitely.

---

procurement of a breach of contract in the absence of a showing that a breach of contract actually occurred.

Even if we were to conclude, moreover, that Tennessee law is flexible enough to allow a cause of action under T.C.A. §47-50-109 for general interference with conditional contracts, we would not find that it does so in the circumstances presented here.  This is not a case where two parties reached an agreement, but a third party then prevented the agreement from consummating; rather, it is a case where two parties recognized that no agreement between them would exist unless actions taken by a third party, *about which they already knew*, could be undone.  Stinson and HCCA knew that Krilich's actions might preclude any agreement between them, so they explicitly stated that they: (1) held each other harmless; and (2) had no mutual contract unless the title dispute could be first ironed out.  It may be true that the actions of defendants-appellees proximately caused Atchley to lose her commission.  But the commission itself depended on a contract that was neither consummated nor breached.

Atchley also argues that, even if Tennessee law does not allow a plaintiff to recover for procurement of a breach of a conditional contract, she should be allowed to recover under a theory of tortious interference with a business relationship or expectancy.  This argument fails for two reasons.  First, Atchley did not state any such claim in her complaint; she clearly states claims only for procurement of breach of contract.  Second, Tennessee does not recognize the tort of interference with a business relationship, in any event. *Nelson v. Martin*, 958 S.W.2d 643, 645-46 (Tenn. 1997).[5]

Although we sympathize with Atchley's position, it is important to note she knew all of the critical circumstances before she drafted the Stinson/HCCA contract.  We find that

---

[5] Atchley also contends that the district court erred by drawing factual inferences in favor of the defendants.  To the extent this occurred, we find that the inferences drawn were not material to the district court's judgment and, accordingly, were harmless.

Atchley advances here. First, the treatises upon which Atchley relies merely state that a conditional contract, even if voidable by the parties by virtue of the failure of a condition, is still a legal contract vis-a-vis third parties. Thus, when neither *party* demands the satisfaction of a condition precedent to a contract, third parties can be liable for interference with unrelated terms of that contract. Even if we concede, therefore, that these treatises define Tennessee law – which we do not – they do not aid Atchley in the circumstances presented here, where it is precisely because of the failure of a condition precedent that the parties chose not to go forward with their agreement, and where the parties understood, at the time the contract was executed, that there was a very real possibility the condition might not be satisfied.

The Tennessee cases upon which Atchley relies are also unhelpful to her cause. In *New Life Corp. of America v. Thomas Nelson, Inc.*, 932 S.W.2d 921, 926-27 (Tenn. Ct. App. 1996), for example, the court concluded only that a plaintiff could prevail on a claim of procurement of a breach of a contract that was otherwise *terminable at will*, not a contract the very existence of which, *ab initio*, depended on a contingency. Indeed, in listing the elements necessary to the plaintiff's cause of action, the *New Life* court pointed out that the action depended upon the existence of a contract breach. *Edwards* and *Love & Amos Coal Co. v. United Mine Workers of America*, 378 S.W.2d 430, 438 (Tenn. Ct. App. 1963), are both similarly distinguishable. In *Edwards*, the Court found that a cause of action can be stated under Tennessee law for a client's contingent fee contract with his attorney; the court concluded that it was the fee which was contingent, not the underlying agreement to provide services. And, in *Love & Amos*, the court found that, although the parties' oral contract would be unenforceable by either of them under the statute of frauds, neither party had invoked that defense to void the contract, making actionable a third party's interference with the parties' ongoing performance of that contract. Simply, none of the cases upon which Atchley relies stand for the proposition that a plaintiff may make out a claim for

$1,000 earnest money. Stinson and HCCA never consummated their deal, so Atchley never received her expected $960,000 in commission. Stinson has since contracted with RK Company to purchase Foxland.

## II.

After it became clear to Atchley that Krilich's actions had worked to deprive her of nearly one million dollars in commission, Atchley sued the defendants for procurement of breach of contract, in violation of Tennessee law. The district court had diversity jurisdiction over this case pursuant to 28 U.S.C. §1332, and we have jurisdiction over Atchley's timely appeal pursuant to 28 U.S.C. §1291.

We review a district court's grant of summary judgment de novo. *Jackson v. Leighton*, 168 F.3d 903, 909 (6th Cir. 1999). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The facts and inferences drawn therefrom are to be viewed in the light most favorable to the non-moving party. *Jackson*, 168 F.3d at 909. Ultimately, this Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.*, 96 F.3d 174, 178 (6th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)).

In her complaint, Atchley claims the defendants "induced the breach of the [HCCA/Stinson] Contract," in violation of "Tennessee common law and also [Tenn. Code Ann.] §47-50-109." Complaint at ¶12. Tennessee courts acknowledge that T.C.A. §47-50-109 merely codifies Tennessee common law regarding procurement of a breach of contract, except to the extent that the statute allows for treble damages. *Myers v. Pickering Firm, Inc.*, 959 S.W.2d 152, 158 (Tenn. Ct. App. 1997); *see Edwards v. Travelers Ins. of Hartford, Conn.*, 563

F.2d 105, 119-20 (6th Cir. 1977) (comparing and contrasting the statutory and common law actions).[3]   The *Myers* court sets out the elements of a cause of action for procurement of the breach of a contract in violation of both the statute and Tennessee common law:

> 1) there must be a legal contract; 2) the wrongdoer must have knowledge of the existence of the contract; 3) there must be an intention to induce its breach; 4) the wrongdoer must have acted maliciously; 5) there must be a breach of the contract; 6) the act complained of must be the proximate cause of the breach of the contract; and, 7) there must have been damages resulting from the breach of the contract.

*Myers*, 959 S.W.2d at 158; *Carruthers Ready-Mix, Inc. v. Cement Masons Local Union No. 520*, 779 F.2d 320, 323 (6th Cir. 1985).

The district court concluded that Atchley could not prevail on her claim for procurement of breach of contract because she could not show the fifth element – breach of a contract. The district court premised this conclusion on the HCCA/Stinson agreement being a "conditional contract," with conditions precedent that were never satisfied. Under Tennessee law, a conditional contract is one "whose very existence and performance depends upon the happening of some contingency or condition expressly stated therein." *Stovall v. Dattel*, 619 S.W.2d 125, 127 (Tenn. Ct. App. 1981).

---

[3]The statute states:

It is unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto; and, in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of the contract. The party injured by such breach may bring suit for the breach and for such damages.

Tenn. Code. Ann. §47-50-109 (1995).

In this case, Stinson and HCCA explicitly agreed that the existence and performance of their contract was "contingent upon [HCCA] resolving all questions and issues regarding title, and obtaining clear and marketable title in order to transfer to [Stinson] clear and marketable title." The parties agreed that, if HCCA failed to meet this contingency, the contract was "null and void." It is undisputed that HCCA never met the contingency. In these circumstances, the district court concluded that the contract that could have netted Atchley a commission never ripened into existence and, hence, could not have been breached.

Atchley does not contend the district court erred in concluding that the HCCA/Stinson agreement was a conditional contract, or that HCCA did not timely meet the contingency. Rather, Atchley argues that Tennessee law allows a plaintiff to recover for procurement of a breach of a conditional contract. Atchley contends that, while it is true that Tennessee courts have consistently described "the existence of a legal contract" and "breach of the contract" to be elements of the tort codified at §47-50-109, these courts have also interpreted "breach" in this context broadly, to include the failure of a condition precedent to a conditional contract. Thus, Atchley contends, when one undertakes activity aimed at preventing a condition precedent to a contract from occurring, one effectively "procures a breach" of that conditional contract and is liable under Tennessee law for having done so.

Atchley supports her reading of Tennessee law with citations to: (1) general tort treatises, which she claims set forth the "general rule" that interference with conditions precedent to the existence of an obligation are actionable;[4] and (2) three cases in which, she asserts, Tennessee courts allowed such claims. As the district court noted, however, these authorities do not stand for the precise proposition

---

[4]Atchley cites *Restatement (Second) of Torts* §766 cmt. f (1979), and W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* §129, at 995 (5th ed. 1984).