# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
September 19, 2000 Session

## TRAU-MED OF AMERICA, INC., ET AL. v. ALLSTATE INSURANCE COMPANY, ET AL.

**A Direct Appeal from the Circuit Court for Shelby County**
**No. 97901 T.D.      The Honorable Robert L. Childers, Judge**

---

### No. W1999-01524-COA-R3-CV - Filed November 29, 2000

---

Plaintiff medical clinic filed a complaint against an insurance company and several of its employees alleging, inter alia, that the defendants tortiously interfered with their business relationship, that the attorneys supplied by the insurance company to represent its insured were guilty of abuse of process and that the defendants conspired to destroy plaintiff's reputation in business. The trial court dismissed the complaint for failure to state a claim upon which relief can be granted. Plaintiff has appealed.

**Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed In Part, Affirmed in Part and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Ed M. Hurley, Memphis, For Appellant, Trau-Med of America, Inc.

R. Layne Holley, Memphis, William H. Frye, Memphis, For Appellees, Allstate Insurance Company, Vickie Harris, Charles D. Ferrell, Leslie Johnson, and Ron Iden

### OPINION

Plaintiff-appellant, Trau-Med of America, Inc. d/b/a Bellevue Clinic, (hereinafter Trau-Med), filed a complaint against defendants-appellees, Allstate Insurance Company, Vickie Harris, Charles D. Ferrell, Leslie Johnson and Ron Iden (hereinafter Allstate or defendants).

Trau-Med, appeals from the order of the trial court granting defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12.02(6) of Tennessee Rules of Civil Procedure.

In its complaint, Trau-Med describes itself as a "Physician Practice Management Company." Trau-Med enters into management agreements to provide administrative services to physicians

providing medical care to the public, including indigent persons with personal injury claims. One source of Trau-Med's business is in referrals from attorneys who represent persons who are injured and unable to afford private medical care or are not covered by health insurance. On November 10, 1998, Trau-Med brought suit against Allstate and four of its employees, Vickie Harris, Charles D. Ferrell, Leslie Johnson, and Ron Iden, in the Circuit Court of Shelby County, alleging that defendants attempted to and did ruin and destroy Trau-Med's reputation and business. Trau-Med's complaint included seven counts against the defendants as follows: Count I, tortious interference with Trau-Med's business with a malicious and intentional motive to destroy and/or damage the business and to cause Trau-Med financial loss; Count II, intentional interference with prospective economic advantage; Count III, abuse of civil process; Count IV, willful , intentional, deliberate, purposeful action causing Trau-Med to lose business; Count V, engaging in a conspiracy for the purpose of destroying Plaintiff's reputation and business; Count VI, violation of § 18 USC 1962(c)(d) of the Federal Racketeer Influence and Corrupt Organizations Act; and Count VII, violation of T.C.A. § 39-12-204(c)(d).

Trau-Med alleges that in a case styled Lendora Jones v. James Colman, Allstate employed attorneys to represent its insured. Thereafter, Allstate, though not a party to the litigation, instigated and caused a motion in limine to be filed alleging that Trau-Med is engaged in the practice of medicine and in providing physical therapy services in violation of Tennessee laws. The complaint avers that defendants' action was for the sole purpose of damaging and/or destroying Trau-Med's lawful business. Through filings, Allstate sought to control claimants with personal injuries incurred in automobile collisions where such claimants had suffered legitimate injuries and were not able to afford medical care. Trau-Med claims that by destroying and/or closing plaintiff's business, and similar businesses, Allstate will have destroyed a business that provided indigent clients with needed medical care.

Trau-Med's complaint further alleges that Allstate provided a defense to other actions[1] in Shelby County Circuit Court and in such cases defendants caused similar motions to be filed. Plaintiff alleges that the attorneys for Allstate's insureds at Allstate's instructions made repeated and redundant discovery requests designed to damage and/or destroy Trau-Med's business. In addition, Trau-Med claimed damages to its reputation based on the fact that Allstate's action received wide publication in the legal profession, especially with attorneys who represent injured claimants; that Allstate had caused damage through intimidation by raising concern with attorneys about the propriety of Trau-Med's business; and that Allstate had created a "hit-list" of clinics and/or organizations with Plaintiff's name included with the intent to destroy those listed entities and damaged Trau-Med by circulating this list among its employees, including all of the defendants in the instant action.

On December 11, 1998, the defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted or, in the alternative, to strike portions of plaintiff's complaint. On August 17, 1999, the trial court ordered that Counts I, IV, V, and VI of plaintiff's complaint be

---

[1] Trau-Med's complaint specifically lists other actions as "In Re: Docket Numbers 90673-4 T.D.(Rook), 90674-4 T.D. (Bracken), 85845-2 T.D. (Smith), 85637-8 T.D. (Small), and 78864-2 T.D. (Warmath)."

dismissed. By the same order Counts II and VII were dismissed upon oral notice of voluntary dismissal pursuant to Rule 41.01 of the Tennessee Rules of Civil Procedure. On November 12, 1999, the trial court reversed itself and dismissed Count III of plaintiff's complaint, thereby dismissing all of plaintiff's complaint not dismissed by the order of August 17, 1999.

Trau-Med appeals, raising one issue as stated in its brief:

> Did the trial court commit error when the court granted defendant's Rule 12.02(b) motion to dismiss for failure to state a claim upon which relief can be granted and dismissed Count I, tortious interference with business; Count III, abuse of civil process, and Count V, conspiracy, of plaintiff's complaint.

A determination of whether a complaint states a claim upon which relief can be granted obviously requires that the court consider only the allegations of the complaint. *See Wolcotts Financial Services, Inc. v. McReynolds*, 807 S.W.2d 708 (Tenn. Ct. App. 1990).

In *Humphries v. West End Terrace, Inc.*, 795 S.W.2d 128 (Tenn. Ct. App. 1990), this Court said:

> A motion to dismiss pursuant to Rule 12.02(6), Tenn. R. Civ. P., for failure to state a claim upon which relief can be granted is the equivalent of a demurrer under our former common law procedure and, thus, is a test of the sufficiency of the leading pleading. *Cornpropst v. Sloan*, 528 S.W.2d 188, 190, 93 A.L.R.3d 979 (Tenn. 1975). Such a motion admits the truth of all relevant and material averments contained in the complaint but asserts that such facts do not constitute a cause of action. *Cornpropst*, 528 S.W.2d at 190. A complaint should not be dismissed upon such motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Fuerst v. Methodist Hospital South*, 566 S.W.2d 847, 848 (Tenn. 1978). In considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the court should construe the complaint liberally in favor of the plaintiff taking all of the allegations of fact therein as true. *Huckeby v. Spangler*, 521 S.W.2d 568, 571 (Tenn. 1975).

*Id.* at 130. *See also Riggs v. Burson*, 941 S.W.2d 44 (Tenn. 1997). A motion to dismiss brought pursuant to Tenn. R. Civ. P. 12.02(6) for failure to state a claim upon which relief can be granted tests only the legal sufficiency of the complaint, and not the strength of plaintiff's proof. *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen and Ginsburg, P.A.,* 986 S.W.2d 550, 554 (Tenn. 1999).

We will address Counts I, III, and V of plaintiff's complaint separately. Count I of Trau-Med's complaint charges defendant with tortious interference with Trau-Med's business with a malicious and intentional motive to destroy and/or damage the business and to cause plaintiff's financial loss.

Although Tennessee Courts have not recognized the tort of interference with prospective economic advantage, *see Nelson v. Martin,* 958 S.W.2d 643 (Tenn. 1997); *and Shahrdar v. Global Housing, Inc.,* 983 S.W.2d 230 (Tenn. Ct. App 1996), the tort of interference with a business relationship is a cognizable claim in Tennessee. In *New Life Corp. of America v. Thomas Nelson, Inc.,* 932 S.W. 2d 921, (Tenn. Ct. App. 1996) a seller alleged that a buyer induced its chief officer and president to perform work for the buyer's benefit while employed by the seller, constituting breach of employment contract and interference with an existing business relation. This Court reversed the trial court's order granting summary judgment, stating that plaintiff had provided affidavits creating a genuine issue of material fact as to whether defendants' contacts with plaintiff's employee constituted an interference with plaintiff's business. In so ruling, the Court stated:

> In *Kan Const. & Cleaning Corp. v. Tatum,* No. 01A01-9304-CV-00150, 1993 WL 434741 (Tenn. Ct. App. Oct. 27, 1993) the Court stated:
>
>> The elements of the tort of interference with business relations are also set out in 45 Am. Jur. 2d *Interference* 50 (1969).
>>
>>> The basic elements which establish a prima facie tortious interference with a business relationship are the existence of a valid business relation (not necessarily evidenced by an enforceable contract) or expectancy; knowledge of the relationship or expectancy on the part of the interferer; an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and resultant damage to the party whose relationship or expectancy has been disrupted.
>
> *Id.* at * 4.

*New Life Corp. of America*, 932 S.W. 2d at 927. "Malice or ill will must be established in order to recover for tortious interference with another's business." *Testerman v. Tragesser,* 789 S.W.2d

553, 556 (Tenn.Ct.App. 1989) (citing *Lann v. Third Nat. Bank in Nashville*, 198 Tenn. 70, 277 S.W.2d 439 (1955)). In *Collins v. Greene County Bank,* 916 S.W.2d 941 (Tenn. Ct. App. 1995) the Eastern Section of the Tennessee Court of Appeals reversed the trial court's order granting defendant summary judgment on the issue of tortious interference with plaintiff's business relationship. In *Collins,* the plaintiff alleged that the defendant bank, through its agents and employees, tortiously destroyed the relationship between himself and a third party by telling the third party "that plaintiff was stealing him blind and 'carrying [him] off.'" *Id.* at 946. The plaintiff claimed that, as a result of defendant bank's comments, the third party would not assist plaintiff in securing a loan, would not pledge more collateral to allow the plaintiff to borrow more money, and evicted plaintiff's business from his property. *Id.* The *Collins* Court found that there was a dispute of material fact as to whether the alleged interference was with an existing business relationship and remanded the case to determine if the requisite elements of the tort existed. *Id.* at 946-47.

Count I of Trau-Med's complaint charges defendants with tortious interference with plaintiff's business with a malicious and intentional motive to destroy and/or damage the business. Trau-Med claims that defendant engaged in a scheme and/or fraud and used tort litigation, in which neither the instant plaintiff or defendants were parties, as a vehicle to attack plaintiff's business and cause other persons to not refer persons to plaintiff's clinic.

Upon a review of the complaint we find the essential allegations present to establish a claim of tortious interference with a business relationship. Trau-Med's complaint avers that an existing business relationship exists between it and attorneys who represent indigent claimants injured in automobile accidents. Trau-Med alleges that such existing relationships suffered as a consequence of Allstate's intimidation of attorneys, claimants and others who have become fearful of using Trau-Med's facilities. Trau-Med avers that defendants conspired among themselves to destroy its business, and that a "hit-list" was circulated among employees naming plaintiff's business as a target for destruction. We believe that the facts alleged in Trau-Med's complaint, taken in a light most favorable to Trau-Med, state a claim for tortious interference with a business relationship. Accordingly, we reverse the trial court's dismissal of Count I of Trau-Med's complaint. In so ruling, we reiterate that we are limited to the face of Trau-Med's complaint on this appeal. We make no ruling as to whether business relationships actually existed between Trau-Med and attorneys representing indigent claimants or whether such relationships were a source of business for Trau-Med, leaving those questions to be addressed on remand, along with whether the other elements of this tort exist.

Count III of Trau-Med's complaint charges the defendants with abuse of process in causing multiple and repetitive subpoenas to be issued to Trau-Med's officers in order to obtain information for the purpose of destroying and damaging Trau-Med's business and to harass Trau-Med's officers and employees. In addition, Trau-Med avers that defendants caused pleadings containing false allegations against Trau-Med and Bellevue Clinic to be filed in actions where defendant had provided representation for the defense of its insured. Trau-Med alleges that such actions caused unnecessary legal costs in defending itself against unwarranted and baseless claims and constitutes an abuse of civil process by the defendants.

In ***Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen and Ginsburg, P.A.,*** 986 S.W.2d 550, 554 (Tenn. 1999) the Tennessee Supreme Court defined the requirements of the tort, abuse of process, by comparing it to another similar tort, malicious prosecution, stating in part:

> In Tennessee there are two tort actions which may be brought to obtain redress for the alleged misuse of legal process by another: malicious prosecution and abuse of process. ***Donaldson v. Donaldson,*** 557 S.W.2d 60, 62 (Tenn.1977); ***Priest v. Union Agency,*** 174 Tenn. 304, 125 S.W.2d 142, 143 (1939). To make out a claim for malicious prosecution, a plaintiff must show that the defendant maliciously brought a prior suit against him or her without probable cause, and that the prior suit was terminated in favor of the plaintiff. ***Roberts v. Federal Express Corp.,*** 842 S.W.2d 246, 248 (Tenn.1992). To establish a claim for abuse of process in Tennessee, as in a majority of other jurisdictions, two elements must be alleged: "(1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge." ***Priest***, 174 Tenn. at 307, 125 S.W.2d at 143 (internal quotations and citations omitted); 1 Am.Jur.2d Abuse of Process § 5 (1994).
>
> Abuse of process differs from malicious prosecution in that abuse of process lies "for the improper use of process *after* it has been issued, not for maliciously causing process to issue." ***Priest,*** 174 Tenn. at 306, 125 S.W.2d at 143 (emphasis added) (internal citations and quotations omitted); ***see also*** Restatement (Second) of Torts § 682 (1977) ("The subsequent misuse of the process, though properly obtained, constitutes the misconduct for which the liability is imposed...."); Fowler V. Harper et al., *The Law of Torts* § 4.9 at 4:84 (3rd ed. 1995) ("The action is not for the wrongful bringing of an action or prosecution, but for the improper use, or rather 'abuse,' of process in connection therewith...."); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 121 at 897 (5th ed. 1984) ("[T]he gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish [footnote omitted].").
>
> As this Court emphasized in ***Priest,***
>
> > The test as to whether there is an abuse of process is whether the process has been used to accomplish some end which is without the regular

> purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be compelled to do.
>
> 174 Tenn. at 307, 125 S.W.2d at 144. . . .  "The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club."  Keeton et al., supra § 121 at 898.

*Bell*, 986 S.W.2d 555.  In sum, the existence of an ulterior motive and an act in the use of process, other than as would be proper in the regular prosecution of a charge, are requirements for sustaining an action for abuse of process. *Black v. Stulberg,* No. 1393, 1991 WL 83334, \*6 (Tenn. Ct. App. May 22, 1991).  Legitimate use of process, although made with an ulterior motive, is not an abuse of process. *Id.* (citation omitted).

In reviewing Trau-Med's complaint we disagree with its contention that the complaint is sufficient to state a claim for abuse of process. Trau-Med claims that defendants' actions, through its hired attorneys issuing subpoenas requesting duplicate documentation and filing motions making false allegations, support a claim of abuse of process by defendants.  Although Trau-Med does assign an ulterior motive to the defendants, as indicated by the foregoing authorities, such motive is not enough to substantiate a claim without a misuse of the process.  The actions on the part of the defendant are rightfully attributable to the defense of its insured.  "An action for abuse of process lies for the use of legal process to obtain a result it was not intended to effect, for a wrong purpose." *Donaldson v. Donaldson*, 557 S.W.2d 60, 62 (Tenn. 1977).  Taking as true the allegation that defendants harbored a malicious motive in issuing subpoenas and in filing pleadings, there is no allegation of a wrongful use.  Accordingly, we uphold the trial court's dismissal Count III of Trau-Med's complaint.

Count V of Trau-Med's complaint alleges that Allstate, together with its agents/employees have engaged in a conspiracy to destroy plaintiff's reputation, business, and clinic. Trau-Med avers that Allstate's employees have attacked  Bellevue Clinic by informing the attorneys representing claimants that they are "out to get Bellevue" or words to similar effect. Trau-Med states that Allstate named Bellevue Clinic on a "hit list" circulated among Allstate's agents/employees.  Trau-Med alleges that Allstate's attorneys, in defending its insured, conspired in using civil process with the intent of damaging and/or destroying plaintiff's business.

Damages for a conspiracy to injure or damage another's business is an actionable wrong in Tennessee. *Baker v. Battershell,* 1986 WL 7602 (Tenn. Ct. App. July 9, 1986).  The *Baker* Court stated:

The court in *Nashville Memorial Hospital, Inc. v. Binkley*, 534 S.W.2d 318 (Tenn. 1976), discussed the elements of this tort:

> Everyone has the right to establish and conduct a lawful business or engage in a lawful profession, and is entitled to the protection of organized society, through its courts, whenever that right is unlawfully invaded. An actionable wrong is established against anyone who is shown to have intentionally interfered with that right, without justifiable cause or excuse. It is, therefore, an actionable wrong for two or more persons to conspire maliciously and without justification or excuse to injure or damage another in the conduct of a lawful business or profession.

534 S.W.2d at 321.

*Baker,* at *2 -*3.

A civil conspiracy is a "combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means." *Braswell v. Carothers,* 863 S.W.2d 722, 727 ( Tenn. Ct. App. 1993) (quoting *Kirksey v. Overton Pub., Inc.,* 739 S.W.2d 230, 236 (Tenn. Ct. App. 1987) (citation omitted)). A cause of action for conspiracy requires that there be a common design, concert of action, and an overt act. *Braswell,* 863 S.W.2d at 727 (citing *Koehler v. Cummings,* 380 F.Supp. 1294, 1313 (M.D.Tenn. 1974). There must also be injury to person or property resulting in attendant damage. *Koehler,* 380 F.Supp. at 1313.

In order to sustain an action for conspiracy, there must be an actionable underlying claim, as "[i]t cannot be that a conspiracy to do a thing is actionable where the thing itself would not be." *Forrester v. Stockstill,* 869 S.W. 2d 328, 330 (Tenn. 1994) (quoting *Felts v. Paradise,* 178 Tenn. 421, 158 S.W.2d 727, 729 (1942)).

In the instant case, the allegations of conspiracy involve the actions of employees and agents of Allstate acting either within or without the scope of their employment. Defendants assert that the employees, of a single corporate entity acting in the scope of their employment, cannot constitute a conspiracy with the employer because their acts are the acts of their employer, a single entity. Defendants assert that the precise issue has not been dealt with by Tennessee courts. However, we do note that this Court in *Lackey v. Metropolitan Life Ins. Co.*, 30 Tenn. App. 390, 206 S.W.2d 806 (1947) considered the allegations of a conspiracy between defendant, Metropolitan, and "its local managers, Joseph I. Laskey and W. L. Mousette, its assistant manager, H. G. Bland, its attorney, Mr. Garland S. Moore, and other agents; and that the intent of this conspiracy was to slander plaintiff,

to have him disbarred, to ruin his business, and to destroy his good name, character, and reputation and his standing both as an individual and as a practicing lawyer." *Id.* at 810. While not specifically deciding the question, the Court concluded that the defendant, Metropolitan, could be liable, either upon the theory of conspiracy or upon the doctrine of *respondeat superior*. *Id*. at 817.

In *Johnson v. Hills & Dales Gen. Hosp., et al*, 40 F.3d 837 (6th Cir. 1994), the Court said:

> This Court has held that in cases brought under section 1985(3), a corporation cannot conspire with its own agents or employees. In *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.,* 926 F.2d 505, 510 (6th Cir. 1991), we stated: "[I]f all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." This holding is generally labeled the "intracorporate conspiracy" doctrine. Although the precept is frequently discussed in the antitrust field, see e.g., *Copperweld Corp. v. Independent Tube Corp.,* 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984) and *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911 (5th Cir. 1952), it is also applied in cases alleging civil rights conspiracies. (Citations omitted.)

*Id.* at 839-40.

Other jurisdictions have applied the intracorporate conspiracy doctrine to bar actions where the agent is acting within the scope of his authority. *See Renner v. Wurdemen*, 231 Neb. 8, 16, 434 N.W.2d 536, 541 (1989); *Dixon v. Reconciliation, Inc.*, 206 Neb. 45, 52, 291 N.W.2d 230, 234 (1980); *Soft Water Utilities, Inc. v. LeFevre*, 159 Ind. App. 529, 308 N.E.2d 395 (1974).

The *Johnson v. Hills & Dales Gen. Hosp., supra,* Court expressed the need to limit the application of the doctrine:

> The intracorporate conspiracy doctrine, if applied too broadly, could immunize all private conspiracies from redress where the actors coincidentally were employees of the same company. Aware of this possibility, courts have created a "scope of employment" exception that recognizes a distinction between collaborative acts done in pursuit of an employer's business and private acts done by persons who happen to work at the same place.
>
> *        *        *        *        *
>
> Finally, corporate actors might be beyond the scope of their employment where the aim of the conspiracy exceeds the reach of legitimate corporate activity. Courts should be wary of situations in

which corporate actors try to interfere with a plaintiff's acess to public benefits or those of other entities....

*Johnson,* 40 F.3d at 840.

Although not involving the precise question of intracorporate conspiracy, we find the case of *Forrester v. Stockstill,* 869 S.W.2d 328 (Tenn. 1994) to be instructive. In *Forrester*, our Supreme Court dealt with the question of liability of two corporate directors for alleged interference with a contractual relationship between the plaintiff-employee and the corporation. In finding that the directors were not liable under the proof introduced, the Court said:

> [W]hen an officer, director, or employee of a corporation acts within the general range of his authority, and his actions are substantially motivated by an intent to further the interest of the corporation, in claims of intentional interference with employment, the action of the officer, director, or employee is considered to be the action of the corporation and is entitled to the same immunity from liability.

*Id.* at 334-35.

The Court noted in reaching its conclusion set out above that a cause of action could exist against the individuals "if the proof establishes that they stood as third parties to the employment relationship at the time they performed the acts found to have caused Forrester's discharge." *Id.* at 331.

We see no reason why the same rules should not apply to interference with a business relationship outside the corporate structure; thus, in the instant case the individuals could be liable to the plaintiff under a proper set of facts. The concerted actions of the individuals could constitute a conspiracy provided that the other required elements of the cause of action are met.

Trau-Med's complaint alleges that Allstate and its agents/employees, representatives, and attorneys have engaged in a conspiracy for the purpose of destroying plaintiff's reputation; that they have attacked the Bellevue Clinic in its dealing with attorneys representing claimants by informing attorneys that they are "out to get Bellevue"; have named Bellevue Clinic on a "hit list" circulated among defendant's employees; and have filed pleadings and sought multiple copies of discovery documents in defending their insured, for the sole purpose of carrying out the conspiracy to intimidate and destroy plaintiff's reputation, business and clinic. We believe that Trau-Med has sufficiently stated a claim for conspiracy based on the alleged interference with existing business relationships. However, we do not agree with appellant that a claim for conspiracy is stated based on defendant's actions in defending suits against its insured. "There can be no conspiracy where the acts complained of, and the means employed in the doing of the acts, are lawful, and so long as the parties seek only to further their own fair interests, they will not be liable for any merely incidental damage to another." *Breuss v. L'Audace, Inc.* No. 01A-0109106-CH-00236, 1992 WL 9440, *4

(Tenn. Ct. App. Jan. 24, 1992) (quoting 16 Am.Jur.2d *Conspiracy* § 49 (1979)(defendants had not conspired in exercising their legal right to control the assets of the corporation to plaintiff's exclusion); *see alsoEmerson v. Machamer,* 221 Tenn. 739, 745-46, 431 S.W.2d 283, 286 (1968) (filing a suit for divorce can not give rise to a cause of action of conspiracy since such filing is a lawful act.); *and Smokey Mountains Beverage Co. v. Anheuser-Busch, Inc.,* 182 F.Supp. 326 (E.D.Tenn. 1960) (no conspiracy existed where defendant corporation had removed plaintiff as their east Tennessee distributor because the business judgement of defendant was not to be questioned by the court).

Issuing the subpoenas and filing the motions were lawful acts in defense of Allstate's insured. Consequently, in viewing the facts alleged in Trau-Med's complaint in a light most favorable to the plaintiff, we conclude that Tra-Med has stated a claim for civil conspiracy based on interference with an existing business relationship. However, the claim cannot be based on legal actions taken by defendants in defense of suits against its insured. Therefore, the trial court's dismissal of Count V of Trau-Med's complaint is reversed.

In sum, the trial court's order dismissing Count I, interference with Trau- Med's business, and Count V, engaging in a conspiracy, is reversed. The trial court's order dismissing Count III of Trau-Med's complaint is affirmed. This case is remanded for such further proceedings as may be necessary. Costs for the appeal are assessed against appellees, Allstate Insurance Company, Vickie Harris, Charles D. Farrell, Leslie Johnson and Ron Iden.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.