**William J. TOBIAS, Plaintiff,**

v.

**FIRST ENERGY NUCLEAR OPERATING COMPANY, et al., Defendant.**

**No. 3:02 CV 7589.**

United States District Court, N.D. Ohio, Western Division.

Feb. 5, 2004.

John D. Franklin, Tracy Anne Lipinski, Law Office of John D. Franklin, Toledo, OH, for Plaintiff.

Denise M. Hasbrook, Roetzel & Andress, Toledo, OH, for Defendant.

## MEMORANDUM OPINION

KATZ, District Judge.

This matter is before the Court on Defendants' Motion for Summary Judgment Against Plaintiff (Doc. No. 33). The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1332. For the reasons stated below, Defendants' motion will be granted.

### BACKGROUND

Plaintiff William Tobias ("Tobias") works as a millwright, specializing in the maintenance and repair of nuclear power plants during scheduled outages. In December of 2001, Tobias learned of a five-week outage scheduled for February of 2002 at the Davis–Besse Nuclear Power Station. Davis–Besse is a nuclear power plant run by Defendant FirstEnergy Nuclear Operating Company, a subsidiary of Defendant FirstEnergy Corp. (collectively referred to as "FENOC"). Tobias contacted the local Union Hall in Toledo, Ohio regarding employment at Davis–Besse during the outage, and the Union directed him to GEM Industrial, Inc. ("GEM"), a specialty contractor used by Davis–Besse. GEM hired Tobias to work for the duration of the plant's outage. In January of 2002, Tobias applied for an "unescorted access" badge [1]. During this process, Tobias completed a "Self Disclosure Questionnaire" (Doc. No. 33, Ex. A–5), as well as a "Consent to Obtain, Retain, and Transfer Information" form (Doc. No. 33, Ex. A–4). On his "Self Disclosure Questionnaire," Tobias indicated that he had both "[b]een on probation/parole or served a prison sentence as a result of a conviction" and "[b]een convicted of a misdemeanor or a felony." Doc. No. 33, Ex. A–

---

1. An unescorted access badge is necessary to work at a facility regulated by the NRC. See 10 C.F.R § 73.55(d)(5) and 10 C.F.R § 73.21.

4. When asked to elaborate, Tobias wrote: "I received a DUI in Topeka KS. [sic] Oct. of 1997. I was given a diversion and a years probation. I also recieved [sic] a DUI in San Clemente CA. [sic] Feb. 2001. I was given a fine and probation." *Id.* In a letter dated February 7, 2002 (hand delivered to Tobias on February 12, 2002), FENOC informed Tobias that he was eligible to pursue "unescorted access" by participating in an alcohol/drug testing program. Doc. No. 32, Ex. D. After a closer review of his disclosures, however, Tobias was denied unescorted access on February 13, 2002, based on his two misdemeanor convictions involving alcohol within the previous five years, with no proof of rehabilitation. Tobias contends that his Certificate of Completion from "Alcohol and Drug Information School" (Doc. No. 32, Ex. I) was proof of rehabilitation; however, FENOC required an assessment of his potential for alcohol or drug abuse to evidence his rehabilitation.

Tobias appealed his denial of access, and was instructed to undergo an alcohol assessment for sufficient proof of rehabilitation. After successful completion of this assessment, Tobias' case was reviewed, and he was granted unescorted access to Davis–Besse on March 19, 2002. Tobias declined to return to Davis–Besse, opting to work at another plant. Tobias did not apply for work between February 13, 2002 and March 19, 2002, but has since been granted unescorted access twice at another nuclear power plant.[2]

Tobias filed suit against FENOC on November 20, 2002 in the Court of Common Pleas, Ottawa County, Ohio. The case was removed to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. Tobias set forth two claims: first, that FENOC's actions constituted a tortious interference with his employment contract with GEM; and second, that FENOC's actions constituted a tortious interference with his employment relationship with GEM. FENOC has moved for summary judgment on both claims.

## DISCUSSION

### A. Summary Judgement Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323–25, 106 S.Ct. 2548. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (*quoting* FED.R.CIV.P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is

---

2. Tobias was granted unescorted access at the San Onofre Nuclear Power Plant from April 2002 until July 2002. Doc. No. 32, p. 56. He was again granted access to San Onofre on October 22, 2002. Doc. No. 33, Ex. A, p. 4.

not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir.2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F.Supp.2d 1069, 1071 (E.D.Mich.2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987)). However, " 'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,' " *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir.1994) (quoting *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505); therefore, "[t]he Court is not required or permitted … to judge the evidence or make findings of fact." *Williams*, 154 F.Supp.2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F.Supp.2d 928, 930 (S.D.Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir.2000).

## B. Tortious Interference with Contract

In Ohio, the elements of tortious interference with contract were most recently established in *Kenty v. Transamerica Premium Insurance Co.*, 72 Ohio St.3d 415, 650 N.E.2d 863 (1995). There, the Ohio Supreme Court held that "in order to recover for a claim of intentional interference with a contract, one must prove:

(1) the existence of a contract,

(2) the wrongdoer's knowledge of the contract,

(3) the wrongdoer's intentional procurement of the contract's breach,

(4) lack of justification, and

(5) resulting damages." [3]

*Id.* at 419, 650 N.E.2d at 866. "The issue in each case is whether the interference is improper or not under the circumstances." *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 176, 707 N.E.2d 853, 858 (1999) (citing 4 Restatement of the Law 2d, Torts, at 28, Section 767, Comment *b* ). "[E]stablishment of the fourth element of the tort of tortious interference with contract, lack of justification, requires proof that the defendant's interference with another's contract was *improper.*" *Id.* (emphasis added). In determining whether an actor has acted improperly, the *Fred Siegel* court held that the trial court should consider the following factors:

(a) the nature of the actor's conduct,

(b) the actor's motive,

(c) the interests of the other with which the actor's conduct interferes,

---

**3.** This approach was adopted from the Restatement of the Law 2d, Torts, Section 766.

(d) the interests sought to be advanced by the actor,

(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

(f) the proximity or remoteness of the actor's conduct to the interference, and

(g) the relations between the parties.

Id. at 178–79, 707 N.E.2d at 860. It is important to note that these are not elements, but merely factors to consider.

■ In the present case, FENOC denied Tobias unescorted access to Davis–Besse in accordance with its duties as a licensee of the Nuclear Regulatory Commission. As an NRC licensee, FENOC is required to develop an access authorization program that includes a background investigation into, among other things, an applicant's criminal history, character, and reputation.[4] The NRC regulations instruct NRC licensees to grant or deny unescorted access based on the information acquired in this investigation.[5] Here, construing the facts in the light most favorable to Tobias, there is no genuine issue of material fact as to whether FENOC's actions were proper. Tobias presents no substantial evidence as to any of the *Fred Siegel* factors listed above, nor does he show that any of

FENOC's conduct was improper. FENOC's access authorization plan was implemented in conformity with NRC regulations, and based on these regulations, FENOC was justified in denying Tobias unescorted access to Davis–Besse.

Tobias contends that FENOC arbitrarily implemented its own administrative procedures, constituting improper conduct sufficient to fulfill the fourth element of tortious interference with contract. In support of this argument, Tobias presents employment records from FENOC that detail instances in which unescorted access was granted to persons with criminal backgrounds and DUI convictions. Doc. Nos. 43, 44, 45, and 46. These documents, however, are not relevant. The issue in the present case is whether FENOC improperly interfered with *Tobias'* employment contract with GEM. Whether FENOC implemented its administrative procedures in an arbitrary manner has no direct bearing on this issue.

NRC regulations state that "[t]he decision as to access authorization and/or employment clearance is a comprehensive, common-sense judgment, made after consideration of all the information." 10 C.F.R. § 10.10(a). In the present case, Tobias disclosed to FENOC that he had

---

**4.** 10 C.F.R. § 73.56(b). This section provides, in relevant part:

(b) General performance objective and requirements.

(1) The licensee shall establish and maintain an access authorization program granting individuals unescorted access to protected and vital areas with the objective of providing high assurance that individuals granted unescorted access are trustworthy and reliable, and do not constitute an unreasonable risk to the health and safety of the public including a potential to commit radiological sabotage.

(2) Except as provided for in paragraphs (c) and (d) of this section, the unescorted access authorization program must include the following:

(i) *A background investigation designed to identify past actions which are indicative of an individual's future reliability within a protected or vital area of a nuclear power reactor.* As a minimum, the background investigation must verify an individual's true identity, and develop information concerning an individual's employment history, education history, credit history, *criminal history,* military service, and verify an individual's character and reputation.

*Id.* (emphasis added).

**5.** 10 C.F.R. § 73.56(b)(3). "The licensee shall base its decision to grant, deny, revoke, or continue an unescorted access authorization on review and evaluation of all pertinent information developed." *Id.*

been convicted of two DUI violations in the past five years. Doc. No. 33, Ex. A–4. FENOC made a common-sense judgment not to grant unescorted access to a nuclear power plant to a man with two recent DUI convictions, without evidence of his rehabilitation. This decision was consistent with FENOC's administrative regulations, as well as Nuclear Regulatory Commission regulations. Tobias has not presented evidence that create an issue of fact as to the propriety of FENOC's conduct. Therefore, FENOC is entitled to summary judgment on the claim of tortious interference with contract.

*C. Tortious Interference with an Employment Relationship*

The elements for a claim of tortious interference with an employment relationship are the same as the elements for a claim of tortious interference with contract, except that the term "contract" is substituted with the term "employment relationship." *Doyle v. Fairfield Machine Co.*, 120 Ohio App.3d 192, 216, 697 N.E.2d 667, 683 (1997). As such, Tobias is required to present evidence that FENOC improperly interfered with his employment relationship with GEM. As discussed above, Tobias has not made a showing that any of FENOC's conduct was improper. Therefore, FENOC is entitled to summary judgment on the claim of tortious interference with an employment relationship.

### Conclusion

For the reasons stated above, Defendants' Motion for Summary Judgment Against Plaintiff (Doc. No. 33) is granted.

IT IS SO ORDERED.